[No. 28691. Department Two. July 31, 1942.]

THE STATE OF WASHINGTON, *Respondent*, v. F. RASMUSSEN, *Appellant*.[1]

¹Reported in 128 P. (2d) 318.

398

*Henderson & McBee,* for appellant.

*The Attorney General, John E. Belcher, Assistant,* and *Richard Welts,* for respondent.

SIMPSON, J.—Defendant was charged with the commission of a crime by an information which stated that he

" . . . without first having obtained a license so to do issued by the Director of Licenses of the state of Washington as provided by law, and without having said license recorded in the office of the Skagit County Clerk, and without first having paid an annual license fee permitting the said F. Rasmussen to practice chiropractic as required by law, did unlawfully induce the belief that he was engaged in the practice of chiropractic in that the said F. Rasmussen did use the words and title X-Ray & H. I. O. Chiropractic, upon a sign on his front porch, and did use the words F. Rasmussen, 404 Fourth St., Office hours from 10:00 a. m. to 12:00 a. m., 1:30 p. m. to 5:00 p. m., upon his front door, and did use the title Chiropractor in the telephone directory, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Washington."

The case was tried to a jury, which found defendant guilty, and, from a judgment and sentence on the verdict, he has appealed. He assigns error in overruling a demurrer to the complaint, in the admission of evidence, in the denial of his motion to strike certain testimony, in the giving of two instructions, in the denial of his motion for judgment in his favor, and in the denial of his motion for a new trial.

As stated by appellant, three questions are presented by this appeal. First, that the information does not charge the commission of a crime, second, that the

evidence of the manager of a telephone company should have been stricken, and, third, that a telephone directory was erroneously received in evidence.

It is appellant's contention that the information, upon which he was tried, charged him with inducing a belief that he was engaged in the practice of chiropractic without having obtained a license from the director of licenses, and that under the law the information did not charge an offense.

Laws of 1919, chapter 5, p. 25, § 15, Rem. Rev. Stat., § 10109 [P. C. § 6369], reads in part as follows:

"Any person who shall practice or attempt to practice chiropractic, . . . or who shall use the title chiropractor, D. C. Ph. C., or any word or title to induce belief that he is engaged in the practice of chiropractic without first complying with the provisions of this act, or any person who shall violate any of the provisions of this act, shall be guilty of a misdemeanor. . . . "

The act created a state board of chiropractic examiners appointed by the governor and gave it power to conduct examinations, issue and revoke licenses, along with authority to enforce their regulations.

By Laws of 1921, chapter 7, p. 68, § 135, Rem. Rev. Stat., § 10893 [P. C. § 4-135], the legislature abolished a large number of administrative boards, among them the board of chiropractic examiners. The pertinent portion of this section reads:

"From and after the thirty-first day of March, 1921, the following offices, boards, commissions, bureaus, and departments of the state government heretofore created by law shall be and are hereby abolished, viz.: . . . the state board of chiropractic examiners, . . ."

Section 96 (1) of the above mentioned chapter, Rem. Rev. Stat., § 10854 [P. C. § 4-96], provides:

"The director of licenses shall have the power, and it shall be his duty:

"(1) To exercise all the powers and perform all the duties now vested in, and required to be performed by, . . . . the state board of chiropractic examiners. . . ."

Section 129 of the above act, Rem. Rev. Stat., § 10887, [P. C. § 4-129], provides as follows:

"In all cases where any powers and duties, which have heretofore been vested in, or performed by, any existing officer, board, commission, bureau, or department, or any deputy or subordinate officer thereof, are by this act transferred, either in whole or in part, to, or vested in and required to be performed by, a department or committee created by this act, or state officer, such powers and duties shall be vested in, and shall be performed by, the department, committee, or officer to which the same are hereby transferred, and not otherwise. And every act done in the exercise of such powers and duties shall have the same legal effect as if done by the former officer, board, commission, bureau, or department, or any deputy or subordinate officer thereof. . . . Every person and corporation shall be subject to the same penalty or penalties, civil or criminal, for failure to perform any such obligation or duty, or for doing a prohibited act, as if such obligation or duty arose from, or such act were prohibited in the exercise of, such power or duty, by the officer, board, commission, bureau, or department, or any deputy or subordinate officer thereof, designated in the respective laws which are to be administered by the departments or committees created by this act, or state officers."

Appellant argues that the act of 1921 substituting the office of director of licenses for the state board of chiropractic examiners was an attempt to amend the former law and is unconstitutional under the provisions of § 37, Art. II, of our state constitution, which reads:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

It is elementary that a statute must be sus-

tained and enforced unless it is in clear and irreconcilable conflict with some express provision of the constitution; and, on the other hand, that, if the constitutional provision and the legislative enactment are so clearly in conflict that they cannot both stand, the statutory provision must of course fail.

A provision similar to the one under consideration is found in most if not all the state constitutions. At an early date, the courts adopted the rule that a provision of this nature must receive a reasonable interpretation.

In the case of *People ex rel. Drake v. Mahaney,* 13 Mich. 481, Mr. Justice Cooley, in speaking for the court, said:

"This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

This case has been generally recognized as establishing the law on the subject not only by our state, but throughout the United States. *State v. Lawson,* 40 Wash. 455, 82 Pac. 750; *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316; *Opportunity Town-*

*ship v. Kingsland,* 194 Wash. 229, 77 P. (2d) 793; *State ex rel. Gammons v. Shafer,* 63 N. D. 128, 246 N. W. 874.

Following this rule of reasonable interpretation, the courts have designated certain statutes, which refer to other statutes, as "reference statutes" and not within the restriction contemplated by the constitutional provision.

"Statutes which refer to other statutes and make them applicable to the subject of the legislation are called 'reference statutes.' Their object is to incorporate into the act of which they are a part the provisions of other statutes by reference and adoption. Reference statutes are of frequent use to avoid encumbering the statute books by unnecessary repetition, and they have frequently been recognized as an approved method of legislation, in the absence of constitutional restrictions. . . . When in one statute a reference is made to an existing law, in prescribing the rule or manner in which a particular thing shall be done, or for the purpose of ascertaining powers with which persons named in the referring statute shall be clothed, the effect generally is not to revive or continue in force the statute referred to for the purposes for which it was originally enacted, but merely for the purpose of carrying into execution the statute in which the reference is made." 25 R. C. L. 907, § 160.

This court, in the case of *State ex rel. Hunt v. Tausick,* 64 Wash. 69, 116 Pac. 651, 35 L. R. A. (N. S.) 802, in holding an act constitutional which provided that cities of the second class may adopt a commission form of government, said:

"It cannot be any objection to this law that, in order to ascertain powers granted to cities organized under it, it becomes necessary to refer to existing laws relative to cities of the second class. The courts have repeatedly recognized the validity of reference statutes, a common and approved method of legislation in the absence of constitutional restrictions."

The act of 1921 involved in this case in no way changed or amended the law pertaining to the qualifications or requirements for chiropractors in this state. It merely abolished the state board of chiropractic examiners and transferred their duties to the director of licenses without in any way changing those duties.

In *Carstens v. DeSellem,* 82 Wash. 643, 144 Pac. 934, this court held an act constitutional which created a department of agriculture, repealed certain acts, and conferred on the commissioner of agriculture certain duties and powers theretofore exercised by other officials. In deciding the case, it was stated:

"The act does not purport to be amendatory. It is an independent act, directly repealing certain enumerated sections. It is true that the act imposes certain duties upon the commissioner which by other statutes are imposed upon other officers. But we do not think this fact renders the act obnoxious to the provision of the constitution under review."

In *Opportunity Township v. Kingsland, supra,* this court upheld an act, passed by the 1937 legislature, which abolished the office of township assessor and did away with separate assessments for township taxes, as not violative of the constitutional provision. The opinion quoted extensively from the case of *People ex rel. Drake v. Mahaney, supra,* and said:

"Chapter 81 does not refer to the township act by title or otherwise, but substantively vests certain public officers with specified functions theretofore performed by other officers. This is a method of legislation frequently followed in the course of our legislative history. . . .

"Our conclusion is that the challenged act, in substance and form, is constitutional."

Legislatures have frequently passed laws abolishing offices or departments and conferring their duties and functions on newly created offices or departments.

These statutes have generally been held to be constitutional under state constitutions similar to ours. *People v. Stimer*, 248 Mich. 272, 226 N. W. 899, 67 A. L. R. 552; *Managers for Relief & Employment of Poor v. Witkin*, 329 Pa. 410, 196 Atl. 837; *Johnson v. Robinson*, 238 Ala. 568, 192 So. 412; *Lloyd v. Smith*, 176 Pa. 213, 35 Atl. 199; *In re Hadley*, 336 Pa. 100, 6 A. (2d) 874.

In the last case, the court said:

"We have several times held that an act terminating given powers and duties in one agency and transferring them to another agency is not required to republish at length all the acts originally conferring such powers and duties."

We are in agreement with the principles expressed in cases cited by appellant relative to the rule of construction of penal statutes. However, the question presented does not involve the construction of the penal aspects of a statute but, merely, if it is proper under our constitution to enact a law which simply changes the personnel of an office but does not disturb the duties of those in charge of the office.

We therefore hold that the act of 1921 was constitutional.

Appellant excepts to two instructions given by the trial court in which the jury were instructed upon the law in accordance with the statutory change of 1921. Inasmuch as we hold the act to be constitutional, these instructions are without error.

Appellant contends that the admission of the telephone book, which showed that appellant was listed as a chiropractor, and the trial court's denial of his motion to strike the testimony of the manager of the telephone company relative thereto, are reversible errors.

B. T. Mueller, the manager of the West Coast Telephone Company, identified the directory to be of the

May, 1940, issue and in general use in Skagit county in January, 1941. He testified that appellant's name appeared in boldface type with other chiropractors; that his address and telephone number followed in the main part of the directory, which entailed an additional charge of fifty cents per month; that such a listing was made only at the request of the person listed; and that appellant's name appeared in the advertising section under "Chiropractors" with his address and telephone number. The witness admitted that he had no contact with appellant personally.

It was stipulated that appellant had a business telephone in his house and that the directories were mailed to all subscribers.

Mr. Lasher, of the state department of licenses, testified that he called at appellant's house January 29, 1941; that there was a sign on the porch bearing the legend "X Ray and H. I. O. Chiropractor"; that on the front door was printed appellant's name and office hours; and that appellant in conversation answered "yes" to the question as to whether or not he was practicing, and showed the witness that he had been admitted in one or two other states. It clearly appeared that the conversation referred to the practice of chiropractic.

Appellant contends that it was necessary for the state to prove that the insertions in the telephone directory were placed there at his request. Appellant did not testify and no evidence was introduced on his behalf.

It does not appear that there was any direct evidence available regarding the insertion in the telephone book. However, circumstantial evidence was admissible to prove that fact. *State v. Bennett,* 6 Wn. (2d) 208, 107 P. (2d) 344.

The facts in this case are similar to those in *State v.*

*Low,* 192 Wash. 631, 74 P. (2d) 458, and *State v. Bennett, supra.*

In the first case, evidence was introduced to show that an advertisement was published in a Seattle newspaper relative to the fact that certain herbs supplied by an herb company would cure disease. The paper's business manager testified that he did not have any personal dealings with the herb company or its representative, who was on trial. We held that the evidence was admissible, when coupled with other evidence to the effect that defendant was present at the address given in the advertisement and made statements which tended to show that he was practicing medicine.

In the second case, the defendant was convicted of the same offense as appellant here. The only evidence introduced was that of two inspectors of the state department of licenses to the effect that the defendant's office had on the window the words "Palmer Graduate, X-Ray, Chiropractic"; that, on entering the office, they found cards with defendant's name and telephone number thereon; and that defendant admitted that he was practicing. The telephone directory with defendant's listing was also received in evidence. In that case, the court said:

"We are of the view that, upon the evidence, the jury not only could have believed that appellant was engaged in the practice of chiropractic without having a license so to do, but also was clearly warranted in finding, as it did, that appellant had 'induced a belief' on the part of the general public that he was engaged in that profession.

"It is true, as appellant points out, that the inspectors did not see the appellant actually performing any manual operation upon a patient, and that no witness testified that he, or she, had been induced to believe that appellant was engaged in the practice of chiropractic. However, it was not essential that the charge of inducing belief be established by direct evidence.

A criminal case, like any other, may be proved by circumstantial evidence, and reasonable inferences have the same probative effect as direct testimony.

"'It is a well settled rule of evidence that any inference which may be reasonably drawn from a fact testified to by a witness, is as legitimate evidence as the fact itself.' *State v. Brache,* 63 Wash. 396, 115 Pac. 853.

"See, also, *State v. Eubank,* 33 Wash. 293, 74 Pac. 378; *State v. Salzman,* 186 Wash. 44, 56 P. (2d) 1005; 20 Am. Jur. 260 *et seq.,* § 273."

In view of these decisions, we hold that the evidence of the manager of the telephone company relative to the contents of the telephone directory and the directory itself were admissible when considered in connection with the evidence given by the witness Lasher.

Finding no error, we affirm the judgment.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.

[1] Reported in 128 P. (2d) 308.