
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE FEB 1 3 2020
CHIEF JUSTICE

This opinion was
filed for record
at 8 a.m. on Feb. 13, 2020

Susan L. Carlson
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TAYLOR BLACK, ANNE BLACK, JERRY KING, RENE KING, ROGER STRUTHERS, MARY LOUISE STRUTHERS, and FRANK MAIETTO, individually and on behalf of a class of all persons similarly situated, | ) ) ) ) ) ) ) ) | No. 97195-1<br><br>En Banc<br><br>Filed     FEB 1 3 2020 |
| Appellants, | ) ) | |
| v. | ) ) | |
| CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY and STATE OF WASHINGTON, | ) ) ) ) ) | |
| Respondents. | ) ) ) | |

OWENS, J. — In 2015, the legislature enacted RCW 81.104.160(1) (MVET statute), which authorizes Sound Transit to use two separate depreciation schedules to calculate motor vehicle excise taxes (MVET). The MVET statute authorizes Sound Transit to use the former 1996 depreciation schedule for MVETs whose revenue is pledged to pay off Sound Transit's bond contracts. The MVET statute further authorizes Sound Transit to use the current 2006 depreciation schedule for all other

MVETs. Though each schedule is referenced, the MVET statute does not restate in full either of these schedules. Taylor Black and other taxpayers allege the MVET statute violates article II, section 37 of the Washington Constitution, which states "[n]o act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

We hold the MVET statute is constitutional for the following reasons: (1) the statute is a complete act because it is readily ascertainable from its text alone when which depreciation schedule will apply, (2) the statute properly adopts both schedules by reference, and (3) the statute does not render a straightforward determination of the scope of rights or duties established by other existing statutes erroneous because it does not require a reader to conduct research to find unreferenced laws that are impacted by the MVET statute.

FACTS AND PROCEDURAL HISTORY

1. *Background*

In 1992, the legislature authorized "counties in the state's most populous region to create a local agency for planning and implementing a high capacity transportation system." ENGROSSED SUBSTITUTE H.B. 2610, at 2, 52d Leg., Reg. Sess. (Wash. 1992). The legislature also allowed any authorized regional transit authority to submit ballot propositions detailing its transportation system plans and proposed financing to voters living in eligible counties. *Id.* at 5, 30. Whenever voters approve of a proposition, the transit authority may then levy and collect local funding from an

MVET. *Id.* at 47-48. An MVET is "a tax on the privilege of relicensing a motor vehicle for use on public roadways." *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 802, 123 P.3d 88 (2005). MVETs are calculated based on the value of the vehicle, as set out by statute in a depreciation schedule. Former RCW 82.44.041 (1991).

In 1993, the King, Pierce, and Snohomish county councils voted to create Sound Transit. In 1996, voters in these counties approved an MVET to fund express bus services and rail lines through Sound Transit. In 1999, Sound Transit then issued $350 million in bonds to finance a portion of the initial construction of these projects. *Pierce County v. State*, 159 Wn.2d 16, 24, 148 P.3d 1002 (2006) (hereinafter *Pierce County* II). In its bond contracts, Sound Transit pledged revenues from the 1996 MVET toward the payment of these bonds. The bonds expire in 2028.

In 2002, voters approved Initiative 776 (I-776), which sought to repeal both the local MVETs for transit funding and the vehicle depreciation schedule used to calculate MVETs, as well as to amend Sound Transit's authority to levy and collect MVETs.

In 2006, the legislature enacted the current depreciation schedule, which results in a lower motor vehicle valuation than the former depreciation schedule. SUBSTITUTE S.B. 6247, at 1, 3, 59th Leg., Reg. Sess. (Wash. 2006). That same year, we held that I-776 "impermissibly impair[ed] the contractual obligations between Sound Transit and [its] bondholders. Thus, I-776 has no legal effect of preventing

3

Sound Transit from continuing to fulfill its contractual obligation to levy the MVET for so long as the bonds remain outstanding." *Pierce County* II, 159 Wn.2d at 51. In response, the legislature passed Senate Bill 6379, which stated all MVETs must be calculated using the former depreciation schedule for bond contracts issued before I-776 was passed. LAWS OF 2010, ch. 161, § 903.

In 2015, the legislature passed the statute in question, RCW 81.104.160(1), stating that any MVET imposed by a regional transit authority (including Sound Transit) must use the former depreciation schedule until it pays off its bond contracts issued before I-776; after Sound Transit pays off its bond contracts, Sound Transit must then use the current depreciation schedule. Specifically, the legislature stated the following:

> *Notwithstanding any other provision of this subsection* or *chapter 82.44 RCW,* a motor vehicle excise tax imposed by a regional transit authority before or after July 15, 2015, *must comply with chapter 82.44 RCW as it existed on January 1, 1996,* until December 31st of the year in which the regional transit authority repays bond debt to which a motor vehicle excise tax was pledged before July 15, 2015. Motor vehicle taxes collected by regional transit authorities after December 31st of the year in which a regional transit authority repays bond debt to which a motor vehicle excise tax was pledged before July 15, 2015, *must comply with chapter 82.44 RCW as it existed on the date the tax was approved by voters.*

RCW 81.104.160(1) (emphasis added).

### 2. *Procedural History*

In 2018, Black, along with a class of licensed motor vehicle owners, filed a complaint against Sound Transit and the State in Pierce County Superior Court

4

seeking declaratory judgment that the MVET statute violates article II, section 37 of the Washington Constitution because it does not set forth at full length either the former or the current depreciation schedule. Furthermore, Black argues the MVET statute improperly amended the current depreciation schedule without setting forth the amended provision in full.

Both parties filed a motion for summary judgment. Sound Transit argued that the MVET statute properly adopts by reference other existing statutes; thus, it is constitutional. The superior court granted Sound Transit's motion and dismissed Black's claim with prejudice. Black appealed the superior court's order to Division Two of the Court of Appeals. Sound Transit filed a motion to transfer the appeal to our court, which we granted.

Shortly before oral argument on September 10, 2019, the State filed a notice indicating the State's response brief and responses to amici contained an inaccurate factual statement. Specifically, the State notified us that the depreciation schedule Sound Transit has been applying is found in Referendum 49, chapter 321, Laws of 1998—not the depreciation schedule that existed on January 1, 1996, as reflected by the MVET statute. However, because Sound Transit's actions do not have any bearing on the constitutionality of the MVET statute itself, this notice does not impact our holding.

ISSUE

Is RCW 81.104.160(1) constitutional if it does not set forth at full length either the former 1996 depreciation schedule or the current 2006 depreciation schedule but references both?

ANALYSIS

We review a trial court's decision granting summary judgment de novo. *Pierce County* II, 159 Wn.2d at 27. Summary judgment is properly granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

We also review constitutional questions and statutory interpretation de novo. *Pierce County v. State*, 150 Wn.2d 422, 429, 78 P.3d 640 (2003) (*Pierce County* I). "'A party challenging a statute's constitutionality bears the heavy burden of establishing its unconstitutionality.'" *Pierce County* II, 159 Wn.2d at 27 (quoting *Larson v. Seattle Popular Monorail Auth.*, 156 Wn.2d 752, 757, 131 P.3d 892 (2006)).

Article II, section 37 of the Washington Constitution provides that "[n]o act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." Article II, section 37 was drafted to protect the legislature and the public against fraud and deception. *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 640, 71 P.3d 644 (2003) (hereinafter *CRWM*). Relatedly, "a significant purpose of article II, section 37 is to

ensure that those enacting an amendatory law are fully aware of the proposed law's impact on existing law." *Wash. Citizens Action of Wash. v. State*, 162 Wn.2d 142, 152, 171 P.3d 486 (2007).

To determine whether a statute violates article II, section 37, the first question we must answer is whether the statute is a "'complete act,'" such that the rights or duties under the statute can be understood without referring to another statute; complete acts that adopt other statutes by reference satisfy this question under article II, section 37. *El Centro de la Raza v. State*, 192 Wn.2d 103, 129, 428 P.3d 1143 (2018) (plurality opinion) (quoting *State v. Manussier*, 129 Wn.2d 652, 663, 921 P.2d 473 (1996)).[1]

The second question we answer is whether "'a straightforward determination of the scope of rights or duties under the existing statutes [would] be rendered erroneous by the new enactment.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Manussier*, 129 Wn.2d at 663).

We address each question in turn. Additionally, the parties dispute in their briefs whether the second part of the test is necessary if we conclude a statute is a complete act. We take this opportunity to clarify that both parts of the test are necessary under our article II, section 37 analysis based on our holding in *El Centro de la Raza*.

---

[1] Justice Wiggins' dissenting opinion joined the plurality on this point. 192 Wn.2d at 142 (Wiggins, J., dissenting).

1. *The MVET Statute Is a Complete Act*

A. *A Statute Is a Complete Act When It Is Readily Ascertainable from the Words of the Statute Alone, and It Satisfies Article II, Section 37 When It Adopts Another Statute by Reference*

If the rights under a statute are "'readily ascertainable from the words of the statute alone,'" then it is a complete act. *Id.* (quoting *CRWM*, 149 Wn.2d at 642). The purpose of this part of the test is "to make sure the effect of new legislation is clear and to 'avoid[] confusion, ambiguity, and uncertainty in the statutory law through the existence of separate and disconnected legislative provisions, original and amendatory, scattered through different volumes or different portions of the same volume.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 245, 11 P.3d 762, 27 P.3d 608 (2000)). Furthermore, "'[n]early every legislative act of a general nature changes or modifies some existing statute, either directly or by implication,' but this, alone, does not inexorably violate the purposes of section 37." *CRWM*, 149 Wn.2d at 640 (quoting *Holzman v. City of Spokane*, 91 Wash. 418, 426, 157 P. 1086 (1916)).

We identified a complete act in *El Centro de la Raza*. There, the statute at issue stated it applied to all charter schools established under chapter 28A.710 RCW, and it further stated all bargaining units at charter schools "'must be limited to employees working in the charter school and must be separate from other bargaining units in schools districts, educational service districts, or institutions of higher education.'" *El Centro de la Raza*, 192 Wn.2d at 128 (quoting RCW 41.59.031;

RCW 41.56.0251). We held this was a complete act even if the statute defined "bargaining units for charter school employees differently than for other public school employees" because the rights under the statute were readily ascertainable from its text alone. *Id.* at 129.

Similarly, rights laid out in the MVET statute are readily ascertainable from its text alone. The MVET statute specifically states in which circumstance each depreciation schedule will apply. It does not matter if the legislature set forth two depreciation schedules for different circumstances and made the current depreciation schedule inapplicable for a period of time because it remains clear to the reader when each depreciation schedule will apply, and that is what article II, section 37 requires. Because the legislature clearly laid out when each schedule will apply, there is no confusion or ambiguity arising from the text of the statute itself. Therefore, the MVET statute is a complete act.

Additionally, "[c]omplete acts which . . . adopt by reference provisions of prior acts . . . or . . . incidentally or impliedly amend prior acts are excepted from section 37." *CRWM*, 149 Wn.2d at 642 (citing *Naccarato v. Sullivan*, 46 Wn.2d 67, 75, 278 P.2d 641 (1955)). "'Statutes which refer to other statutes and make them applicable to the subject of the legislation are called reference statutes.'" *State v. Rasmussen*, 14 Wn.2d 397, 402, 128 P.2d 318 (1942) (internal quotation marks omitted) (quoting 25 RULING CASE LAW *Statutes* § 160, at 907 (1919)). "Reference statutes are of frequent

use to avoid encumbering the statute books by unnecessary repetition, and they have frequently been recognized as an approved method of legislation." *Id.*

The MVET statute properly adopts both depreciation schedules by reference. In *Gruen v. State Tax Commission*, the legislature enacted a reference statute to create a fund for the retirement of veterans' compensation bonds. 35 Wn.2d 1, 6, 24, 25, 211 P.2d 651 (1949), *overruled on other grounds by State ex rel. Wash. State Fin. Comm. v. Martin*, 62 Wn.2d 645, 384 P.2d 833 (1963). In *Gruen*, section 9 of the statute stated that all cigarette excise taxes "imposed by Title XII" shall be paid into the fund. *Id.* at 6. We held this was a proper reference statute under article II, section 37 because "it is a statute which refers to, and adopts by reference, the pre-existing statutes [i.e., Title XII], and makes them applicable to this legislation." *Id.* at 25. We did not require the legislature to set out Title XII in full.

Black argues the MVET statute is not a reference statute because it does not adopt or incorporate the current depreciation schedule but rather makes it inapplicable for a period of time. Black is incorrect. Like the statute in *Gruen*, which adopted by reference Title XII, the MVET statute adopts by reference both depreciation schedules. The MVET statute first indicates that the former depreciation schedule will be used with respect to Sound Transit's bond contracts, and then it indicates that the current depreciation schedule will be used for all other circumstances. The fact that the MVET statute makes one schedule inapplicable for a period of time has no effect on the statute's constitutionality because the statute still complies with one of

10

the primary purposes of article II, section 37—"ensur[ing] that those enacting an amendatory law are fully aware of the proposed law's impact on existing law." *Wash. Citizens Action of Wash.*, 162 Wn.2d at 152. Therefore, the MVET statute is a complete act that properly adopts both schedules by reference.

> B. *The MVET Statute Does Not Reference a Repealed Statute Because the Former Depreciation Schedule Was Not Repealed with Respect to Sound Transit's Bond Contracts*

Black argues that the legislature cannot revive a repealed statute by referencing it. Black's argument is unavailing because the MVET statute does not revive a repealed statute. While the former depreciation schedule is repealed with respect to MVETs that have been imposed after I-776 was passed, we held in *Pierce County* II that I-776 had no effect on Sound Transit's bond contracts before December 5, 2002, and it did not prevent Sound Transit "from continuing to fulfill its contractual obligation to levy the MVET for so long as the bonds remain outstanding." 159 Wn.2d at 51. Though I-776 sought to repeal the former depreciation schedule in its entirety, our decision in *Pierce County* II authorizes Sound Transit to continue to use this schedule for MVETs whose revenue is pledged to pay off its bond contracts. *Id.* Therefore, the former depreciation schedule is still in effect with respect to Sound Transit's bond contracts, and the MVET statute is not reviving a repealed statute.

### C. *Black's Remaining Arguments That the MVET Statute Does Not Adopt Other Statutes by Reference Are Incorrect*

Black argues, "To identify which schedule governs the MVET on a given date[,] one must look not only to the text of the Act[] but also to the continued existence of [Sound Transit's] earlier issued bonds." Reply Br. of Appellants at 16. Black's argument is unavailing. In effect, Black argues the only way the legislature may comply with article II, section 37's "set[ting] forth at full length" requirement is to list out every bond Sound Transit issued before I-776 was passed to ensure voters know which bonds refer to which MVETs. However, to require the legislature to fully list out this information would contradict the purpose of permitting reference statutes, which is to "avoid encumbering the statute books by unnecessary repetition." *Rasmussen*, 14 Wn.2d at 402.

Black also argues that reference statutes may only refer to existing law and cannot refer to external sources (i.e., Sound Transit's bond contracts). But we have never held that referencing external sources in a statute is unconstitutional. Article II, section 37 is intended to protect the legislature and the public against fraud and deception. *CRWM*, 149 Wn.2d at 640. By referencing external sources, the legislature is avoiding fraud and deception—it is informing readers of the statute what external sources apply to the statute and their overall effect. To bar reference to external sources in statutes would unnecessarily restrict and burden the legislature's role in drafting statutes.

12

2. *The MVET Statute Does Not Render the Scope of Rights or Duties Created by Any Other Existing Statutes Erroneous*

A. *We Employ a Two-Part Test To Determine Compliance with Article II, Section 37 Even If the Statute Is a Complete Act*

Sound Transit argued in its briefing that if a statute is a complete act, then courts need not consider the second prong of the article II, section 37 test. Sound Transit is incorrect. We stated in *El Centro de la Raza* that we use a "two-part test to evaluate an article II, section 37 challenge" because nearly every statute modifies some other existing statute, but that does not mean the legislation is unconstitutional. 192 Wn.2d at 128 (citing *CRWM*, 149 Wn.2d at 640). In other words, a complete act, especially an act that adopts other statutes by reference, may still violate article II, section 37 because a complete act can still render existing statutes erroneous by not informing readers how the statute is impacting or modifying a straightforward determination of the scope of rights and duties created by those other statutes. Therefore, we reiterate that when considering whether a statute violates article II, section 37, courts must consider both whether the statute is a complete act *and* whether it renders erroneous a straightforward determination of the scope of rights and duties created by other existing statutes.

B. *The MVET Statute Does Not Require Research into Unreferenced Statutes*

Article II, section 37 is intended so "'[c]itizens or legislatures must not be required to search out amended statutes to know the law on the subject treated in a new statute.'" *Id.* at 131 (alteration in original) (internal quotation marks omitted)

13

(quoting *Wash. Citizens Action of Wash.*, 162 Wn.2d at 152). In *El Centro de la Raza*, we reviewed two different statutes that impacted charter school employees' collective bargaining rights. *Id.* at 129-30. One of these statutes stated collective bargaining rights were granted "to 'any county or municipal corporation, or any political subdivision of the state of Washington,' except those covered by other collective bargaining laws." *Id.* at 130 (quoting RCW 41.56.020). We held this statute violated article II, section 37 because "it require[d] a thorough search of existing laws in order to understand the Act's effect on other provisions of chapter 41.56 RCW" since it did not list out which collective bargaining laws were affected. *Id.* at 131-32.

In contrast, the MVET statute is clear in its effect—if a specific MVET is pledged to Sound Transit's bond contracts that were made before I-776 was passed, then the former 1996 depreciation schedule will be used; if a specific MVET is not pledged to Sound Transit's bond contracts, then the current 2006 depreciation schedule will be used. Unlike the statute in *El Centro de la Raza*, the MVET statute lists out which statutes apply at which time, and no reader is required to conduct a "thorough search of existing laws" that are unreferenced to understand the statute's effect. Therefore, the MVET statute does not render a straightforward determination of the scope of rights and duties created by any other existing statutes erroneous and thus does not violate article II, section 37.

C. *The MVET Statute's "Notwithstanding" Language Reflects the Impact the Statute Has on Existing Laws*

We reach the same conclusion on the MVET statute's constitutionality when we consider the "notwithstanding" language used in the MVET statute. As previously stated, one of the purposes of article II, section 37 is to disclose the effect of the new legislation and its impact on existing laws. *Wash. Citizens Action of Wash.*, 162 Wn.2d at 152. In *State v. Thorne*, we reviewed an initiative that stated a persistent offender shall be sentenced to life imprisonment without the possibility of parole "*notwithstanding* the maximum sentence under any other law." 129 Wn.2d 736, 746, 921 P.2d 514 (1996) (emphasis added) (quoting former RCW 9.94A.120(4) (1994), *recodified as* RCW 9.94A.505 by LAWS OF 2001, ch. 10, § 6), *abrogated in part on other grounds by In re Pers. Restraint of Eastmond*, 173 Wn.2d 632, 272 P.3d 188 (2012). We held this language made the effect of the initiative "obvious" and provided the initiative's impact on existing laws. *Id.* at 756.

The MVET statute uses the same language, indicating the former depreciation schedule will be used for Sound Transit's bond contracts "notwithstanding" the current RCW chapter that includes the current depreciation schedule. Therefore, the MVET statute's effect on other statutes is clear, and it does not render a straightforward determination of the scope of rights or duties under any other existing statutes erroneous.

D. *Black's Interpretations of Our Previous Holdings Are Incorrect*

Black argues that we have struck down statutes similar to the MVET statute under an article II, section 37 analysis. However, Black misinterprets our holdings from these cases. First, in *Washington Education Ass'n v. State*, we struck down a budget proviso that limited school districts' ability to grant salary increases greater than a specific amount because an amended statute "was not fully set forth in the . . . act which purported to amend it." 93 Wn.2d 37, 41, 604 P.2d 950 (1980). We struck down the proviso because "[i]n order to understand the effect of the limitation, one must refer to" other provisions that were not listed anywhere in the act. *Id.* at 40-41. In contrast, the MVET statute references both depreciation schedules and their respective statutes and clearly states which schedule will apply to which MVET. It does not require the reader to search unreferenced statutes to discover the full effect of the statute.

Second, Black argues the MVET statute is similar to the statute we struck down in *Flanders v. Morris*, 88 Wn.2d 183, 558 P.2d 769 (1977). In *Flanders*, we held a legislative appropriations bill violated article II, section 37 because "[o]ne seeking the law on the subject would have to know one must look under an 'appropriations' title in the uncodified session laws to find the amendment," but the statute never cited to these session laws. *Id.* at 189 (emphasis omitted). Black argues the MVET statute is similar to the statute struck down in *Flanders* because both statutes included a provision that restricted the use of another statute for a temporary amount of time.

However, that is not why we found the statute in *Flanders* unconstitutional; to the contrary, we concluded that a restriction, while temporary, is still a statutory amendment and thus subject to article II, section 37 analysis. *Id.* Unlike the statute in *Flanders*, the MVET statute provides all the necessary information readers must know to understand their rights affected by the MVET statute.

Finally, Black argues that the MVET statute is different from the statute we upheld in *Retired Public Employees Council of Washington v. Charles*, 148 Wn.2d 602, 62 P.3d 470 (2003). Specifically, Black argues the MVET statute "suspends the operation of an existing statute on an ongoing basis, for a stretch of time determined" at Sound Transit's discretion, unlike the statute in *Charles*. Br. of Appellants at 43. However, the legislature is not restricted from enacting a statute that temporarily suspends another existing statute. *See Thorne*, 129 Wn.2d at 746. Additionally, the suspension of the current depreciation schedule is not fully at Sound Transit's discretion because Sound Transit's bonds will expire in 2028.

### 3. *Black's Additional Claims Are Unavailing*

Black argues article II, section 37 does not inquire into legislators' actual knowledge. Senators Michael Padden and Steve O'Ban, as amici, similarly argue inquiring into legislators' understanding of a statute's effect is unconstitutional. Given that we resolve this case without considering what individual legislators knew, we do not reach this issue. And finally, the parties dispute whether the MVET statute is a complete act because it merely incidentally or impliedly amends prior statutes.

*See Weyerhaeuser Co. v. King County*, 91 Wn.2d 721, 738, 592 P.2d 1108 (1979) (quoting *Naccarato*, 46 Wn.2d at 75). Because we hold the MVET statute does not violate article II, section 37 because it falls within a different exception, we do not address this argument.

## CONCLUSION

We hold RCW 81.104.160(1) is constitutional under article II, section 37. It is readily ascertainable from the words of the statute alone when which depreciation schedule will apply, and the statute properly adopts both schedules by reference. Furthermore, the MVET statute does not render any other existing statutes erroneous because it does not require any reader to conduct research for unreferenced statutes to understand the rights impacted by the MVET statute itself. Accordingly, we affirm the Superior Court's judgment.

Owens, J.

WE CONCUR:

Wiggins, J.

Madsen, J.

González, J.

Fairhurst, CJPT.

Yu, J.

No. 97195-1

GORDON McCLOUD, J. (dissenting)—"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." WASH. CONST. art. II, § 37. This provision is designed to "avoid confusion, ambiguity and uncertainty in the law." *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 192, 11 P.3d 762, 27 P.3d 608 (2000).

The local motor vehicle excise tax (MVET) statute before us purports to reenact an entire RCW chapter—"chapter 82.44 RCW"—"as it existed on January 1, 1996." RCW 81.104.160. But that MVET statute does not "reference" any specific statute within that prior "chapter 82.44 RCW" and certainly does not "set forth" the unreferenced 1996 depreciation schedule "at full length." Further, that MVET statute fails to mention that incorporating 1996's "chapter 82.44 RCW" into current law completely "revise[s] or amend[s]" the depreciation schedule contained in current RCW 82.44.035. Finally, because that MVET statute incorporates by reference not just the depreciation schedule that the parties and the

1

majority focus on but an entire chapter of the 1996 code—along with that chapter's
sometimes outdated 1996 cross-references—the MVET statute ends up
incorporating material that is inconsistent with laws on the books today.

These three problems—incorporating an old depreciation schedule without
mentioning it; overriding an otherwise current depreciation schedule without
mentioning it, much less setting it forth "at full length"; and incorporating by
reference an entire chapter along with its 24-year-old, sometimes outdated, cross-
references—are severe and pervasive. They render the MVET statute
unconstitutional in violation of article II, section 37's explicit requirements. They
also completely undermine its goals of "avoiding confusion, ambiguity, and
uncertainty in the law."

I therefore respectfully dissent.

I.    FACTUAL BACKGROUND

The majority accurately outlines the history of motor vehicle excise taxing
authority in Washington since 1992. Majority at 2-4. But it omits an account of
the parallel development and amendment of the depreciation schedule for
calculation of motor vehicle excise tax. A brief summary follows.

Prior to 1990, Washington calculated motor vehicle excise tax due based on
the "fair market value" of the vehicle taxed. LAWS OF 1988, ch. 191, § 1(1). In

1990, the legislature replaced the "fair market value" language with instructions

and charts designed to more accurately calculate the value of a taxed vehicle based

on its age. LAWS OF 1990, ch. 42, § 303. This 1990 "depreciation schedule" was

codified at RCW 82.44.041. *Id.*; former RCW 82.44.041 (1992).

That 1990 schedule remained in effect until 1998, when the legislature

amended it. The 1998 amendment reduced the taxable value of certain vehicles.

LAWS OF 1998, ch. 321, § 4.

Thus, when Sound Transit approved its 1996 motor vehicle excise tax, the

1990 depreciation schedule was still in effect. But when Sound Transit issued its

bonds in 1999, the new, reduced 1998 schedule controlled.

Then, in 1999, the voters passed Initiative 695 (I-695). LAWS OF 2000, ch. 1,

§ 3. That 1999 initiative purported to repeal all motor vehicle excise tax, including

the 1998 depreciation schedule. *Id.* But this court declared I-695 unconstitutional

"in its entirety" the following year. *Amalg. Transit*, 142 Wn.2d at 257.

After the superior court declared I-695 unconstitutional (and before this

court spoke), the legislature independently enacted some of I-695's provisions.[1]

---

[1] This court ruled that I-695 contained structural and procedural constitutional
problems. *See Amalg. Transit*, 142 Wn.2d at 256-57 (listing the violations). The
legislature's repeal of statewide motor vehicle excise tax did not contain the same
problems.

LAWS OF 2000, 1st Spec. Sess., ch. 1. One of those provisions was a repeal of

statewide motor vehicle excise tax. *Id.* § 2. Local entities, such as Sound Transit

or municipalities, retained authority to collect motor vehicle excise tax under

certain conditions. *See, e.g.*, LAWS OF 1998, ch. 321, §§ 25(1), (4), 35.

In 2002, the voters passed Initiative 776 (I-776), repealing "[a]ny motor

vehicle excise tax previously imposed," as well as many other related statutes.

LAWS OF 2003, ch. 1, §§ 4-6. One of the statutes repealed was the 1998

depreciation schedule (again). *Id.* § 5(6) (repealing former RCW 82.44.041).

In 2006, however, we declared a piece of I-776 unconstitutional: we held

that section 6 of I-776 had "impermissibly impair[ed] the contractual obligations

between Sound Transit and the bondholders" and declared that section

unconstitutional as applied to Sound Transit. *Pierce County v. State*, 159 Wn.2d

16, 51, 148 P.3d 1002 (2006).[2]

---

[2] The parties dispute whether *Pierce County* invalided I-776's attempted repeal of the 1998 depreciation schedule, former RCW 82.44.041. Br. of Appellants at 27; Br. of Resp't Sound Transit at 25-26; Reply Br. of Appellants at 13-14. This is a complicated question. The majority agrees with Sound Transit that we deemed I-776's purported repeal of the 1998 depreciation schedule unconstitutional, thus leaving that schedule on the books. Majority at 11-12 (citing *Pierce County*, 159 Wn.2d at 51).

But the majority misses a critical point about what *Pierce County* said. *Pierce County* acknowledged that it was only section 6 of I-776 that repealed "[a]ny motor vehicle excise tax previously imposed." LAWS OF 2003, ch. 1, § 6. Sound Transit had issued $350 million in bonds in reliance on revenue from that "motor vehicle excise tax

But during that same year—2006—and just before the ruling in *Pierce County*, the legislature passed a new local motor vehicle excise tax bill, complete with a new depreciation schedule.[3] LAWS OF 2006, ch. 318, § 1. Because I-776

---

previously imposed." We therefore held that *section 6* unconstitutionally impaired Sound Transit's contract with its bondholders. *Pierce County*, 159 Wn.2d at 51. Throughout our opinion, we referred specifically to "section 6" of I-776 as the problem. *Id.* at 33, 39, 51 (repeatedly referring to "section 6"). We held that "section 6 impermissibly impair[ed] the contractual obligations between Sound Transit and the bondholders. Thus, I-776 has no legal effect of preventing Sound Transit from continuing to fulfill its contractual obligation to levy the MVET for so long as the bonds remain outstanding." *Id.* at 51.

But section 6 did not repeal the old depreciation schedule. Section 5 did that. And *Pierce County* does not mention section 5 of I-776 once in its opinion. Thus, the challengers plausibly argue that I-776's repeal of section 5 was actually effective.

To be sure, *Pierce County* arguably invalidated all the sections of I-776 to the extent they interfered with Sound Transit's contract with its bondholders. But did repeal of a general depreciation schedule do that? Some statements from *Pierce County* suggest that the answer is yes. 159 Wn.2d at 34-35 ("[T]he Sound Transit bonds did not reserve the right to reduce the MVET pledged to bondholders in any amount."). Some suggest that the answer is no. *Id.* at 30 ("[T]he contract protected by the constitution includes the terms of the bonds, their authorizing resolutions . . . , the official statement, and chapters 81.112 and 81.104 RCW, governing Sound Transit."); *see also Tyrpak v. Daniels*, 124 Wn.2d 146, 153, 874 P.2d 1374 (1994) ("A mere change in the value or rating of the outstanding bonds, by itself, is not enough to prove an impairment of contract.").

Whatever the correct interpretation of *Pierce County*, the 1996 schedule was no longer good law by the time I-776 purported to repeal it. The legislature had already amended that 1996 schedule in 1998. When the legislature passed the MVET statute in 2015, the status of the 1996 schedule was far from clear.

[3] The legislature may amend or repeal laws passed by initiative two years after they are enacted. WASH. CONST. art. II, § 1(c).

had repealed the old schedule, the legislature created a new statutory section, RCW 82.44.035, for its new schedule, rather than amending the repealed schedule. LAWS OF 2006, ch. 318, § 1; RCW 82.44.035. Notably, according to a Sound Transit financial executive, no entity has ever used 2006's RCW 82.44.035 to calculate motor vehicle excise tax. Clerk's Papers (CP) at 406.

In 2010, the legislature made explicit that for motor vehicle excise tax "pledged to repay a bonded debt issued before December 5, 2002, . . . the motor vehicle excise tax must comply with chapter 82.44 RCW as it existed on January 1, 1996." LAWS OF 2010, ch. 161, § 903.

Then, in 2015, the legislature passed the new MVET statute in front of us today. That 2015 law empowered regional transit authorities, such as Sound Transit, to collect motor vehicle excise tax. It also added the challenged incorporation-by-reference language to RCW 81.104.160:

> Notwithstanding any other provision of this subsection or chapter 82.44 RCW, a motor vehicle excise tax imposed by a regional transit authority before or after July 15, 2015, *must comply with chapter 82.44 RCW as it existed on January 1, 1996*, until December 31st of the year in which the regional transit authority repays bond debt to which a motor vehicle excise tax was pledged before July 15, 2015. Motor vehicle taxes collected by regional transit authorities after December 31st of the year in which a regional transit authority repays bond debt to which a motor vehicle excise tax was pledged before July 15, 2015, must comply with chapter 82.44 RCW as it existed on the date the tax was approved by voters.

6

LAWS OF 2015, 3d Spec. Sess., ch. 44, § 319(1) (emphasis added).

This history of motor vehicle excise tax in Washington is not easy to follow. The statutes have been amended, repealed, and reenacted by both the legislature and the people, and we have invalidated portions of those enactments and repeals as unconstitutional. The legislature's latest attempt in 2015 to revitalize an entire RCW chapter as it existed in 1996, without "set[ting] forth" any specific statute and without mentioning whether it intended to affect just the 1996 depreciation schedule or all of 1996's "chapter 82.44 RCW," further confuses things. That 2015 statute's apparent attempt to partially invalidate the depreciation schedule currently on the books without "set[ting it] forth" at all, much less setting it forth "at full length," makes things even worse. In my opinion, it makes things so bad that it violates article II, section 37.

II.    ANALYSIS

Article II, section 37 of our state constitution provides a two-step framework for evaluating a statute's validity. The first question we ask in an article II, section 37 challenge is whether the statute at issue constitutes a "complete act." *El Centro de la Raza v. State*, 192 Wn.2d 103, 129, 428 P.3d 1143 (2018) (plurality opinion). This requirement "make[s] sure [that] the effect of new legislation is clear" and

7

"'avoid[s] confusion, ambiguity, and uncertainty in the statutory law through the existence of separate and disconnected legislative provisions, original and amendatory, scattered through different volumes or different portions of the same volume.'" *Id.* (internal quotation marks omitted) (quoting *Amalg. Transit*, 142 Wn.2d at 245). If the act is incomplete, it violates article II, section 37. *Amalg. Transit*, 142 Wn.2d at 256.

But even if the act is complete, "[a]nother purpose of the constitutional limitation is to apprise those who are affected by an existing law of any important changes." *Wash. Educ. Ass'n v. State*, 93 Wn.2d 37, 41, 604 P.2d 950 (1980) (*Wash. Educ. Ass'n* I). Thus, the next question we ask is "whether "'a straightforward determination of the scope of rights or duties under the existing statutes [would] be rendered erroneous by the new enactment.'"'" *El Centro*, 192 Wn.2d at 129 (alteration in original) (quoting *State v. Manussier*, 129 Wn.2d 652, 663, 921 P.2d 473 (1996) (quoting *Wash. Educ. Ass'n v. State*, 97 Wn.2d 899, 903, 652 P.2d 1347 (1982) (*Wash. Educ. Ass'n* II))). If an enactment "requires a thorough search of existing laws in order to understand [its] effect on other provisions," then it also violates article II, section 37. *Id.* at 131-32.

The language challenged here flunks both tests.

8

### A. The MVET Statute Is Not a Complete Act

The MVET statute is not a complete act. It purports to adopt a 1996 version of a full RCW chapter whose constituent statutes have since been modified (in big and small ways) by ballot initiatives, session laws, and opinions from this court, without mentioning which portions of old chapter 82.44 RCW really survive. The motor vehicle excise tax scheme has become so confusing that the Department of Licensing (DOL) itself has been applying the wrong depreciation schedule "for some time"—an error the State acknowledged on the day of oral argument before this court. Notice [of factual concession], *Black v. Cent. Puget Sound Reg'l Transit Auth.*, No. 97195-1 (Wash. Sept. 10, 2019). The MVET statute's overgeneral cross-reference to a full 1996 chapter—combined with its silence about its impact on the 1996 depreciation schedule, its impact on the other portions of that large chapter, its impact on the nested cross-references within that chapter, or its impact on the current depreciation schedule—all make RCW 81.104.160 woefully incomplete.

     1. The MVET Statute Is Not a Complete Act Because Its Effects—Especially Its Effects on RCW 82.44.041—Are Not Clear

RCW 81.104.160 is hard to decipher. It directs Sound Transit to "comply with chapter 82.44 RCW as it existed on January 1, 1996" until Sound Transit

9

repays its bond debt. But it completely fails to state the subject matter of the 1996 legislation that this cross-reference intends to revitalize. To identify the law's impact on depreciation schedules, for example, the reader must locate an archived 1996 edition of the RCW.[4] The reader must then compare and contrast the full 1996 chapter 82.44 RCW with the current chapter 82.44 RCW. The reader may then find that among many other statutes, 1996's chapter 82.44 RCW contained a depreciation schedule and, when comparing that depreciation schedule to current law, vehicle values depreciated more slowly under 1996's RCW 82.44.041 than under the current RCW 82.44.035.

But that's not what RCW 81.104.160 says. Instead, it says that Sound Transit must comply with all of "chapter 82.44 RCW" as it existed in 1996 until it repays its bond debt. And the MVET statute does not limit its cross-reference to reanimating the 1996 depreciation schedule. It reanimates the rest of that chapter, too. That introduces more confusion because the 1996 chapter 82.44 RCW differs in many respects from current chapter 82.44 RCW.

---

[4] Conveniently, the legislature provides public access to such an archive on its website. *See* http://leg.wa.gov/CodeReviser/RCWArchive/Pages/default.aspx. Inconveniently, this resource "contain[s] all laws of a general and permanent nature through the 1996 regular session, which adjourned sine die March 7, 1996." http://leg.wa.gov/CodeReviser/RCWArchive/Documents/1996/Vol0.pdf at i. So it does not quite reveal the precise state of the law "as it existed on January 1, 1996."

The first difference between 1996's chapter 82.44 RCW and today's chapter 82.44 RCW is stark. Current chapter 82.44 RCW implements and regulates motor vehicle excise tax imposed by *localities* pursuant to authority delegated by other statutes (such as RCW 81.104.160). The 1996 law, in contrast, imposed *statewide* motor vehicle excise tax. Former RCW 82.44.020 (1996), LAWS OF 1993, Spec. Sess., ch. 23, § 61. Many of the 1996 version's other provisions concern details about collecting that statewide tax, disposing of statewide tax revenue, and exemptions from statewide motor vehicle excise tax. *See, e.g.*, former RCW 82.44.041, .110, .025 (1996). The legislature repealed the statewide tax in 2000, but it left in place many of the implementing details—which were by then cross-referenced by statutes empowering localities to impose their own MVET. LAWS OF 2000, 1st Spec. Sess., ch. 1, § 2(4); former RCW 81.104.160 (2000); former RCW 35.58.273 (2000).

Thus, in 1996, local governments looked to chapter 82.44 RCW to calculate vehicle value. *See* former RCW 81.104.160 (2000); former RCW 35.58.273 (2000). The other provisions of 1996 chapter 82.44 RCW implemented that chapter's statewide motor vehicle excise tax scheme, not local motor vehicle

excise tax. Only since 2010, and never before, has Sound Transit been required to "comply with" unspecified 1996 laws in its motor vehicle excise tax collection.[5]

In other words, the 1996 and current versions of the chapter serve fundamentally different purposes—current chapter 82.44 RCW implements taxation imposed by other statutes; 1996's chapter 82.44 RCW imposed taxation itself. Accordingly, many of the 1996 statutes are incoherent or irrelevant as applied to Sound Transit today. *See, e.g.*, former RCW 82.44.110, .150, .155, .160 (1996).

The next difference between 1996's chapter 82.44 RCW and today's chapter 82.44 RCW is less stark, but it is still confusing. It concerns how Sound Transit goes about collecting its tax. Under the current RCW 82.44.135, Sound Transit "must contract with the [DOL] for the collection of the tax" and the DOL "may charge a reasonable amount, not to exceed one percent of tax collections, for the administration and collection of the tax." Sound Transit and the DOL have agreed to just such an arrangement: a 2018 agreement between the two provides a list of

---

[5] Sound Transit of course had to comply with all applicable provisions of the code in 1996. But not until 2010 did a statute direct it specifically to "comply with" any portion of chapter 82.44 RCW other than the portion devoted to vehicle value calculation.

"reimbursable costs . . . associated with the administration and collection of the tax," citing RCW 82.44.135.[6]  CP at 370.

But RCW 82.44.135 did not exist in 1996. *See generally* former chapter 82.44 RCW (1996); LAWS OF 2006, ch. 318, § 9.  Nor did any section of former chapter 82.44 RCW provide for such a reimbursement arrangement.  Rather, the legislature allowed regional transit authorities to "contract with the state department of revenue or other appropriate entities for administration and collection of any tax authorized."  Former RCW 81.104.190 (1996).  This statute remains on the books largely unchanged.  RCW 81.104.190.

So with whom should Sound Transit contract?  Under current RCW 82.44.135, it *must* contract with the DOL.  Under current and former[7] RCW

---

[6] Under the majority's reading of *Pierce County*, payment of any motor vehicle excise tax to the DOL would reduce bondholder security and, hence, would arguably violate the contract clause.  If *Pierce County* invalidated a new methodology for calculating vehicle value, surely its holding would also invalidate a new payment of a percentage to the DOL.

[7] Presumably Sound Transit should use *current* RCW 81.104.190, as the MVET statute directs it only to the 1996 version of chapter *82.44* RCW and not chapter 81.104 RCW.

13

81.104.190, it should contract with the Department of Revenue "or other appropriate entities."[8]

Nothing from the 1996 chapter 82.44 RCW seems to flatly contradict current RCW 82.44.135. Must Sound Transit comply with provisions of the *current* chapter 82.44 RCW that did not exist in 1996 but are not contradicted by the 1996 version? If so, its agreement with the DOL seems appropriate—but a reader of the statute must go through the current and 1996 chapters 82.44 RCW with a fine-tooth comb to evaluate exactly which provisions have changed, which contradict one another, and which stand independently. If not, Sound Transit's arrangement with the DOL has no authority in law—and the MVET statute renders every provision of current chapter 82.44 RCW that did not exist in 1996 invalid.

A third difference between 1996's chapter 82.44 RCW and current chapter 82.44 RCW also renders the MVET statute incomplete: 1996 chapter 82.44 RCW refers to other (presumably 1996) statutes and chapters, but not all of those nested cross-references are still on the books today. *See, e.g.*, former RCW 82.44.060 (1996) (referencing chapters 46.87 and 46.70 RCW); former RCW 82.44.065

---

[8] Former RCW 82.44.060 (1996) describes how motor vehicle excise tax is "due and payable to the department or its agents at the time of registration of a motor vehicle." But it refers to taxes imposed by chapter 82.44 RCW *itself* and includes no provision for transmitting revenue collected to regional transit authorities like Sound Transit.

(1996) (referencing chapter 34.05 RCW); former RCW 82.44.170 (1996)

(referencing RCW 46.16.070, .085; RCW 46.68.035).

Looking at one example, in 1996, RCW 82.44.010(3) defined a "truck-type

power or trailing unit" as "any vehicle that is subject to the fees under RCW

46.16.070 except vehicles with an unladen weight of six thousand pounds or less."

LAWS OF 1990, ch. 42, § 301(3). Cross-referenced RCW 46.16.070 has since been

recodified into multiple current statutes. LAWS OF 2010, ch. 161, §§ 530, 1217;

RCW 46.16A.455; RCW 46.17.355.

So, if a taxpayer wants to determine whether their vehicle is a "truck-type

power or trailing unit" under "chapter 82.44 RCW as it existed on January 1,

1996," where should they look? RCW 46.16.070 as it existed in 1996?[9] The

recodified version now located at RCW 46.16A.455? The new statute containing

equivalent information to the former RCW 46.16.070 now located at RCW

46.17.355? Whatever the correct answer, the effects of the statute are far from

"readily ascertainable from the words of the statute alone." *Citizens for*

*Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 642, 71 P.3d 644 (2003).

---

[9] Former RCW 46.16.070 (1996) in turn directs the reader to former RCW 46.16.125 (1996) and former chapters 46.44, 46.68, 46.87, and 46.88 RCW (1996). Indeed, if we are to continue chasing the 1996 version of each cross-reference, the legislature may well have recreated the majority of the 1996 code.

15

This problem pervades every cross-reference in chapter 82.44 RCW as it existed in 1996.

Many of these cross-references arguably have little effect, given that they relate to elements of the old chapter 82.44 RCW that make no sense to apply to Sound Transit's taxation under RCW 81.104.160.[10] But the legislature did not say that. Instead, another burden falls on the reader of the MVET statute to determine which sections of the old statute are effective, which cross-references within those sections are effective, and whether to look to 1996 or current versions of those cross-references.

Even on the subject of depreciation schedules alone, the State is confused by the MVET statute's instructions. On the day of oral argument, the State acknowledged that it has used not the 1996 schedule called for in the MVET statute, but the subsequent *1998* schedule for "some time." Notice [of factual concession], *supra*. Indeed, by the time Sound Transit issued its bonds in 1999, the legislature had amended the 1990 depreciation schedule that was in effect in 1996. LAWS OF 1998, ch. 321, § 4. A Sound Transit executive declared that

---

[10] The MVET statute by its terms does not apply to vehicles licensed under the current truck, bus, and for hire vehicle licensing scheme. RCW 81.104.160(1) (citing RCW 46.16A.455).

16

neither Sound Transit nor any other entity has ever used the current RCW 82.44.035 schedule to collect motor vehicle excise tax. CP at 406. Apparently, since Sound Transit issued its bonds, Sound Transit has not used the 1996 schedule either. It seems the only schedule RCW 81.104.160 successfully implemented is one that it did *not* reference: RCW 82.44.041 as it existed in 1998.

The duties imposed by RCW 81.104.160(1) standing alone are incomprehensible, preventing it from being a complete act.

> 2. The MVET Statute Is Not "Excepted from Section 37['s]" Requirements on the Ground That It Constitutes a "Reference Statute"

The majority concludes that the MVET statute is a valid reference statute and, hence, that it is "'excepted from [article II,] section 37.'" Majority at 10 (quoting *Citizens*, 149 Wn.2d at 642).

We have certainly held that "[c]*omplete acts* which (1) repeal prior acts or sections thereof on the same subject, (2) adopt by reference provisions of prior acts, (3) supplement prior acts or sections thereof without repealing them, or (4) incidentally or impliedly amend prior acts, are excepted from section 37." *Citizens*, 149 Wn.2d at 642 (emphasis added). Thus, "reference statutes" that are complete acts and that "'refer to other statutes and make them applicable to the subject of the legislation,'" do not violate article II, section 37. *State v.*

17

*Rasmussen*, 14 Wn.2d 397, 402, 128 P.2d 318 (1942) (quoting 25 RULING CASE

LAW *Statutes* §160, at 907 (1919)).

The MVET statute, RCW 81.104.160, does include a reference to another

statute—well, to another chapter that is full of statutes. But the fact that it includes

a reference does not make it a constitutional "reference statute." Reference statutes

must first be complete acts—in other words, they must still comply with the rule

that the "scope of the rights created or affected by the bill can be ascertained

without referring to any other statute or enactment." *Citizens*, 149 Wn.2d at 641.

As discussed above, the MVET statute flouts that rule; hence, it cannot be a valid

reference statute.

>   B. *The MVET Statute Also Fails the Second Step of the Article II,
>   Section 37 Test Because a Thorough Search of Existing Law Is
>   Insufficient To Determine Its Effects*

Even if a statute is complete, it will still violate article II, section 37 if it

renders ""'"a straightforward determination of the scope of rights or duties under

the existing statutes"'"" erroneous. *El Centro*, 192 Wn.2d at 129 (quoting

*Manussier*, 129 Wn.2d at 663 (quoting *Wash. Educ. Ass'n II*, 97 Wn.2d at 903)).

Even a complete statute must "apprise those who are affected by an existing law of

any important changes" made by the newly enacted statute. *Wash. Educ. Ass'n I*,

93 Wn.2d at 41. "Citizens or legislators must not be required to search out

amended statutes to know the law on the subject treated in a new statute." *Wash.*
*Ass'n of Neigh. Stores v. State*, 149 Wn.2d 359, 373, 70 P.3d 920 (2003) *abrogated*
*on other grounds by Filo Foods, LLC v. City of SeaTac*, 183 Wn.2d 770, 357 P.3d
1040 (2015). Rather, the "new statute must explicitly show how it relates to
statutes it amends." *Id.* (citing *State v. Thorne*, 129 Wn.2d 736, 756, 921 P.2d 514
(1996)). The MVET statute fails this test as well.[11]

In *El Centro*, we held that the charter school statute's collective bargaining
provisions violated this test because they "require[d] a thorough search of existing
laws in order to understand [their] effect on other provisions." *Id.* at 131-32. The
statute violated article II, section 37 because it affected collective bargaining rights
without referencing any collective bargaining statutes, not even the ones changed
by the new charter school laws. *Id.* The charter school statute at issue therefore
failed to "apprise those who [were] affected by" the existing collective bargaining
statutes of the "important changes" made by the newly enacted statute. *Wash.*
*Educ. Ass'n I*, 93 Wn.2d at 41.

---

[11] I agree with the majority's conclusion that we must consider this second step of
the article II, section 37 analysis even where the challenged legislation is a complete act.
Majority at 13.

The MVET statute suffers from the same defect. It invalidates numerous statutes in *current* chapter 82.44 RCW without setting them forth and so fails to alert those affected by current laws that a new scheme is in effect. First and foremost among these invalidated statutes is the current depreciation schedule, RCW 82.44.035.

The current depreciation schedule, by its terms, calculates the value of vehicles "[f]or the purpose of determining *any* locally imposed motor vehicle excise tax." RCW 82.44.035(1), (3) (emphasis added). A taxpayer or legislator reading this broad language would reasonably understand it to apply to "any" motor vehicle excise tax collected by Sound Transit. But the legislature rendered that understanding erroneous when it passed the MVET statute, which covertly amended the applicability of the current depreciation schedule contained in RCW 82.44.035. And because the MVET statute did not fully set forth RCW 82.44.035, it does not "apprise those who are affected by an existing law"—namely, readers of the current depreciation schedule—"of any important changes" the MVET statute made to the current schedule, including rendering the current schedule inapplicable. *Wash. Educ. Ass'n* I, 93 Wn.2d at 41.

In passing the MVET statute, the legislature amended the current depreciation schedule, RCW 82.44.035, without setting it forth at full length.

20

Through that amendment, no reader of the current depreciation schedule can understand the law as it stands today without "a thorough search" of the Revised Code of Washington and its archives. *El Centro*, 192 Wn.2d at 131. By rendering the current schedule erroneous without setting it forth in full, the MVET statute violates the second prong of the article II, section 37 test.

CONCLUSION

Article II, section 37 exists to prevent """"separate and disconnected legislative provisions . . . scattered through different volumes'" from creating confusion, ambiguity, and uncertainty in the law. *Amalg. Transit*, 142 Wn.2d at 245 (quoting *Flanders v. Morris*, 88 Wn.2d 183, 189, 558 P.2d 769 (1977) (quoting *State ex rel. Gebhardt v. Superior Ct.*, 15 Wn.2d 673, 685, 131 P.2d 943 (1942))). The effects of the MVET statute before us are scattered not only across the code but also across a complicated 24-year history. And the MVET statute renders another enactment of our legislature—the current depreciation schedule— inoperative without ever referencing it, much less setting it forth "at full length."

The MVET statute therefore violates the constitutional mandate designed to provide clarity to the legislative process. I respectfully dissent.

Gord McCloud, J.

Stephens, CJ

22