**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 27, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 27, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WASHINGTON STATE ASSOCIATION OF COUNTIES, a Washington nonprofit association; SNOHOMISH COUNTY, a Washington municipal entity; KITTITAS COUNTY, a Washington municipal entity; and WHITMAN COUNTY, a Washington municipal entity; | ) ) ) ) ) ) ) ) ) ) ) | No. 99230-4 |
| Respondents, | ) ) | |
| v. | ) ) | |
| STATE OF WASHINGTON, | ) ) | |
| Petitioner. | ) ) ) | Filed: <u>January 27, 2022</u> |

YU, J. — This case concerns the amount of reimbursement that counties are

entitled to from the State for costs associated with purchasing, installing, and

operating additional ballot boxes. In order to answer that question, we must

consider the relationship between RCW 29A.40.170 (the ballot box statute), RCW

29A.04.430 (the reimbursement statute, hereinafter referred to as Section 430), and

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

RCW 43.135.060 (the unfunded mandate statute). We must also consider the constitutional challenges to Section 430 raised by the respondents and the trial court.

We hold that Section 430 controls over the unfunded mandate statute and provides reimbursement only of the State's proportional share for the costs of compliance with the ballot box statute. Further, we hold that the 2020 amendment of Section 430 does not violate article II, section 37 of the Washington Constitution and that the respondents Snohomish, Kittitas, and Whitman Counties (the Counties) cannot claim any vested right that would require us to invalidate the retroactive effect of Section 430. We therefore reverse the order granting partial summary judgment and remand to the trial court for further proceedings.

BACKGROUND

The State of Washington sought direct review of a trial court order granting partial summary judgment to the Counties and the Washington State Association of Counties (WSAC).[1] The State contends that it is required to reimburse political subdivisions only for its proportional share of any election related costs, pursuant to Section 430 and RCW 29A.04.410-.470 (the election cost statutes). Respondents claim that all counties are entitled to full reimbursement for the costs

---

[1] WSAC is the coordinating agency for the counties of Washington, authorized by RCW 36.32.350.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

of adding ballot drop boxes in their respective counties, in accordance with the

unfunded mandate statute.

A.      Background on elections in Washington State

In Washington, county auditors are "ex officio the supervisor[s] of all

primaries and elections, general or special," in their counties.  RCW 29A.04.216.

Auditors are responsible for "provid[ing] the supplies and materials necessary for

the conduct of elections," including ballot drop boxes.[2]  *Id.*  They "shall also

apportion to the county, each city, town, or district, and to the state of Washington,

its share of the expense of such primaries and elections."  *Id.*  The auditors use a

reimbursement process governed by RCW 29A.04.410-.470 (the election cost

statutes) to recover each jurisdiction's proportional share of election costs.

The county election office must keep track of all expenses related to an

election in order to allocate costs to other jurisdictions.  Auditors then follow the

reimbursement process outlined in the *Budgeting, Accounting, and Reporting*

*System, Generally Accepted Accounting Principles (BARS GAAP) Manual*, which

is a uniform "system of accounting and reporting for all local governments,"

created by the state auditor.[3]  RCW 29A.04.420(3); RCW 43.09.200.  This manual

treats operating expenses and capital expenses differently.  "Operating expenses"

---

[2] Mail ballots are required for every election.  RCW 29A.40.010.  Voters can submit their ballots by mail or drop box.  RCW 29A.40.091(4).

[3] The *BARS GAAP Manual* is available online at https://sao.wa.gov/bars-annual-filing/bars-gaap-manual/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

include salaries and wages, benefits, supplies, and services, as well as equipment that falls below the capital threshold (which for most counties is $5,000). Clerk's Papers (CP) at 661. "Capital expenses" are any expense above the capital threshold.

Operating costs are allocated by either the number of issues and offices on the ballot or the number of registered voters in each jurisdiction. Capital expenses may be allocated using one of two methods. Counties have discretion to choose their allocation method. The first is a depreciation method where "'[c]harges must be based on rates that will result in a reasonable recovery of the original equipment over its useful life.'" *Id.* at 662. The second method allows counties to charge a 15 percent "overhead factor" to "all other costs associated with an election." *Id.* The reimbursement methods do not provide for full reimbursement of election costs.

B.      Recent amendments to election laws concerning ballot boxes and
        reimbursement

In 2017, the legislature passed Substitute Senate Bill 5472, which amended RCW 29A.40.160 by adding a provision concerning the number of ballot drop boxes that must be installed throughout the state. LAWS OF 2018, ch. 112, § 4(17). The provisions regarding ballot drop boxes were later recodified into a separate section, RCW 29A.40.170 (the ballot box statute). LAWS OF 2019, ch. 6, §§ 5, 6. Pursuant to this statute, county auditors are required to install a "minimum of one

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

ballot box per fifteen thousand registered voters in the county and a minimum of one ballot drop box in each city, town, and census-designated place in the county with a post office." RCW 29A.40.170(2). The fiscal note stated that the statute would require the purchase and installation of 257 ballot drop boxes statewide and estimated that it would cost $1,285,000 to implement the program, with ongoing annual costs of $1,000 per box. Agency Fiscal Note to Substitute S.B. 5472, at 2, 65th Leg., Reg. Sess. (Wash. 2017) (prepared by Dep't of Commerce).

The legislature did not appropriate additional funding for the ballot box statute. S.B. REP. ON SUBSTITUTE S.B. 5472, at 2, 65th Leg., Reg. Sess. (Wash. 2017). The Office of the Secretary of State offered limited grants to "distressed rural counties" for the amount of $1,000 per ballot drop box purchased on a first-come, first-served basis. CP at 430-32. Based on the record, it appears that only five counties received this grant. *Id.* at 54-55.

Counties can seek reimbursement from the State, cities, towns, and districts for their "proportionate share of the costs" pursuant to RCW 29A.04.410-.470 (the election cost statutes). RCW 29A.04.410. This statutory scheme was enacted to ensure "that the county is not responsible for any costs involved in the holding of any city, town, district, state, or federal election." *Id.* Prior to July 1, 2021, Section 430 provided that counties could seek reimbursement from the State only for the State's portion of election costs in odd-numbered years. In 2020, Section

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

430 was amended to permit reimbursement from the State for elections in even-numbered years. LAWS OF 2020, ch. 337, § 4. The amendment also added a provision stating that "[f]unding provided in this section to counties for election costs in even-numbered years is retrospective and prospective reimbursement under RCW 43.135.060 [(the unfunded mandate statute)] for any new or increased responsibilities under this title." RCW 29A.04.430(2).

C.     Present dispute and procedural history

Some counties, such as Snohomish and Kittitas, began implementing the ballot box statute immediately, despite concerns about how they would be able to afford such significant costs. These counties then submitted reimbursement requests to the State, most of which were denied. Other counties, including Whitman County, could not afford to comply with the ballot box statute. Whitman County also did not qualify as a "distressed rural county" and was therefore not eligible for a grant. CP at 443.

The Counties and WSAC filed suit against the State for its denial of their reimbursement claims, seeking declaratory judgment and damages. The parties agreed to file "cross-motions for partial summary judgment as to legal issues that do not involve questions of fact." *Id.* at 25-26. After briefing and oral argument, the trial court granted partial summary judgment in favor of the Counties.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

The court's order contained "findings" that the 2020 amendment to Section 430 violated article II, section 37 of the Washington Constitution, and that making it retroactive would impermissibly interfere with the Counties' vested rights "to seek reimbursement under the Unfunded Mandate Statute." *Id.* at 798, 800. Based on those findings, the court ordered that the ballot box statute "is an unfunded mandate" and that "[a]ll Washington State counties shall be entitled to full reimbursement from the State" pursuant to the unfunded mandate statute. *Id.* at 800. Further, the court ordered that "Clallam, Cowlitz, Grays Harbor, Jefferson, Kitsap, Kittitas, Klickitat, Lewis, Pierce, and Snohomish counties are entitled to damages in the form of full reimbursement for funds expended to date in order to comply with SB 5472 but for which the State has denied them full reimbursement." *Id.* at 800-01. The State sought direct review in this court.

## ISSUES

A.     Does RCW 29A.04.430 (Section 430), a statute that specifically governs election costs, control over the more general RCW 43.135.060 (unfunded mandate statute)?

B.     Does the 2020 amendment of Section 430 (ESHB 2421) violate the Washington Constitution article II, section 37?

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

C.      Do the Counties, having spent money to comply with the ballot box statute, have a vested right to full reimbursement such that the retrospective effect of Section 430 is unconstitutional?

## ANALYSIS

The issues before this court require statutory and constitutional interpretation in order to determine the amount of reimbursement that is due to the Counties. Because we are reviewing an order granting partial summary judgment, "the standard of review is de novo, and [we] perform[] the same inquiry as the trial court." *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We reverse the order granting partial summary judgment in favor of the Counties and WSAC and remand to the trial court for further proceedings.

A.      Section 430 is a more specific statute and controls the extent of election cost reimbursement over the general unfunded mandate statute

Our analysis begins with determining which statute controls the amount of reimbursement that the Counties are entitled to receive from the State: the unfunded mandate statute or Section 430. The two statutes conflict because the unfunded mandate statute requires full reimbursement for new or increased responsibilities, while Section 430 and the rest of the election cost statutes allow for only partial reimbursement of election costs, even where the legislature has imposed a new or increased responsibility. This conflict requires us to engage in statutory interpretation. "Our primary duty in interpreting any statute is to discern

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

and implement the intent of the legislature." *State v. J.P.*, 149 Wn.2d 444, 450, 69

P.3d 318 (2003) (citing *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9,

19, 978 P.2d 481 (1999)). In doing so, we start with "'the statute's plain language

and ordinary meaning.'" *Id.* (quoting *Nat'l Elec.*, 138 Wn.2d at 19).

Pursuant to the election cost statutes, counties are entitled only to

reimbursement of each jurisdiction's "proportionate share of the costs." RCW

29A.04.410. Section 430 specifically states that "[f]unding provided in this section

to counties for election costs in even-numbered years is retrospective and

prospective reimbursement under RCW 43.135.060 [(the unfunded mandate

statute)] for any new or increased responsibilities under this title." RCW

29A.04.430(2).[4] In other words, Section 430 explains that partial reimbursement

satisfies the State's obligation with regard to the unfunded mandate statute. By

including this provision, the legislature intended to limit all reimbursement of

election costs to each jurisdiction's proportional share. The parties do not dispute

that costs resulting from implementation of the ballot box statute are treated as

election costs in accordance with the election cost statutes and the BARS GAAP

Manual.

Section 430 expressly references the unfunded mandate statute. RCW

29A.04.430(2). "The plain meaning of a statute may be discerned 'from all that

---

[4] The constitutional validity of this provision will be addressed in the next section.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" *J.P.*, 149 Wn.2d at 450 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). Therefore, we must also consider the text of the related unfunded mandate statute, which states:

> [T]he legislature shall not impose responsibility for new programs or increased levels of service under existing programs on any political subdivision of the state unless the subdivision is fully reimbursed by the state for the costs of the new programs or increases in service levels. Reimbursement by the state may be made by: (a) A specific appropriation; or (b) increases in state distributions of revenue to political subdivisions.

RCW 43.135.060(1). In accordance with this statute, legislation that requires a political subdivision to establish new programs or increase their services to the public must be fully funded by the State.

Absent proper funding, the ballot box statute would be considered an unfunded mandate pursuant to the test outlined in *City of Seattle v. State* because the statute is a "responsibility imposed by the Legislature," and the costs associated with implementation of the statute "are part of . . . an increased level of services under an existing program" because the county auditors are required to purchase, install, and operate additional ballot boxes in their counties. 100 Wn.2d 16, 21, 666 P.2d 359 (1983). In accordance with the unfunded mandate statute, the Counties would be entitled to full reimbursement from the State for the costs of

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

implementing the ballot box statute. This, however, is not the end of our inquiry because Section 430 and the other election cost statutes might provide sufficient funding to avoid triggering the obligations of the unfunded mandate statute.

Respondents argue that statutory construction "is [not] appropriate here[] because the language of the unfunded mandate statute is unambiguous." Br. of Resp'ts at 24-25. This argument ignores the relationship between the two statutes. The plain language of these statutes reveals a conflict because each statute would treat election cost reimbursement differently. This poses an issue similar to the one discussed in *J.P.*, where a definition in one statute contradicted "the broad, permissive statement" of another statute. 149 Wn.2d at 453. This court concluded that the contradiction produced "either an ambiguous statute or conflicting provisions" and then proceeded with statutory interpretation. *Id*. The same is true here because Section 430 and the unfunded mandate statute both concern reimbursement but contradict each other by providing different amounts. "Where we are called upon to interpret an ambiguous statute or conflicting provisions, we may arrive at the legislature's intent by applying recognized principles of statutory construction." *Id*. at 450. Well-settled principles of statutory interpretation lead us to conclude that the more specific statute, Section 430, controls over the general unfunded mandate statute.

11

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

First, "conflicting statutes must be reconciled to give effect to each of them." *Tunstall v. Bergeson*, 141 Wn.2d 201, 211, 5 P.3d 691 (2000). We should not interpret statutes in a way that would render any language "'meaningless or superfluous.'" *J.P.*, 149 Wn.2d at 450 (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999)). Due to a growing voting population and advancements in the way states conduct elections, new responsibilities or increased levels of service may be imposed regularly. The State is correct that applying the unfunded mandate statute over Section 430 would leave the election cost statutes "with no effect" any time the legislature imposes a new responsibility because the proportional reimbursement process would rarely apply. State's Opening Br. at 18. The legislature established its intent to limit reimbursement for election costs to each jurisdiction's proportional share when it first enacted the election cost statutes and continued to demonstrate this intent when it amended Section 430 to include an express reference to the unfunded mandate statute. We must respect the legislature's intent and find a way to reconcile both statutes and "give effect to each of them." *Tunstall*, 141 Wn.2d at 211.

Next, "[a] general statutory provision must yield to a more specific statutory provision." *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 356, 340 P.3d 849 (2015) (citing *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629-30, 869 P.2d 1034 (1994)). This

12

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

does not mean that the more specific statute invalidates the general statute.

Instead, "the [specific statute] will be considered as an exception to, or

qualification of, the general statute, whether it was passed before or after such

general enactment." *Wark v. Wash. Nat'l Guard*, 87 Wn.2d 864, 867, 557 P.2d

844 (1976).

Section 430 and the other election cost statutes address expenses that result

from conducting elections, making them more specific in this context. The

unfunded mandate statute is located in chapter 43.135 RCW, titled "State

Expenditures Limitations." These statutes are general in nature as they are not

limited to a single subject matter. Section 430 therefore operates as an "exception

to, or qualification of, the general [unfunded mandate] statute" in the context of

election costs. *Id*.

Section 430, instead of the unfunded mandate statute, governs the amount of

reimbursement due to the Counties for election costs, limiting reimbursement to

the State's proportional share.

B.      The 2020 amendment to Section 430 does not violate Washington
         Constitution article II, section 37

Next, we must consider the Counties' argument that the 2020 amendment to

Section 430 (ESHB 2421) is unconstitutional because it amends the unfunded

mandate statute in a manner that violates article II, section 37 of the Washington

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

Constitution. The trial court agreed that this amendment was unconstitutional. We hold that the 2020 amendment does not violate article II, section 37.

Article II, section 37 states that "[n]o act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." The provision at issue is Section 430, which states that "[f]unding provided in this section to counties for election costs in even-numbered years is retrospective and prospective reimbursement under RCW 43.135.060 [(the unfunded mandate statute)] for any new or increased responsibilities under this title." RCW 29A.04.430(2). Although Section 430 has an effect on the unfunded mandate statute, the amending legislation did not set out the text of the unfunded mandate statute in full. *See* LAWS OF 2020, ch. 337, § 4. "We use a two part-test to evaluate an article II, section 37 challenge because while '[n]early every legislative act of a general nature changes or modifies some existing statute, either directly or by implication,' that does not necessarily mean that the legislation is unconstitutional." *El Centro de la Raza v. State*, 192 Wn.2d 103, 128, 428 P.3d 1143 (2018) (plurality opinion) (alteration in original) (internal quotation marks omitted) (quoting *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 640, 71 P.3d 644 (2003)).

The first part of the test is "whether 'the new enactment [is] such a complete act that the scope of the rights or duties created or affected by the legislative action

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

can be determined without referring to any other statute or enactment.'" *Id.*

(alteration in original) (internal quotation marks omitted) (quoting *State v.*

*Manussier*, 129 Wn.2d 652, 663, 921 P.2d 473 (1996)). This part of the test is

designed to "make sure the effect of new legislation is clear and to 'avoid[ ]

confusion, ambiguity, and uncertainty in the statutory law through the existence of

separate and disconnected legislative provisions . . . scattered through different

volumes.'" *Id.* at 129 (first alteration in original) (internal quotation marks

omitted) (quoting *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 245,

11 P.3d 762 (2000)). An act is "exempt" from this constitutional analysis when it

"is 'complete in itself . . . and stand[s] alone as the law on the particular subject of

which it treats,'" even if it impacts other existing statutes. *Amalg. Transit Union*,

142 Wn.2d at 246 (second alteration in original) (quoting *State ex rel. Living*

*Servs., Inc. v. Thompson*, 95 Wn.2d 753, 756, 630 P.2d 925 (1981)); *see also Black*

*v. Cent. Puget Sound Transit Auth.*, 195 Wn.2d 198, 207, 457 P.3d 453 (2020).

ESHB 2421, which amended Section 430 and the rest of the election cost

statutes, is a complete act because the counties' rights to reimbursement are

"'readily ascertainable from the words of the statute alone.'" *El Centro de la Raza*,

192 Wn.2d at 129 (quoting *Citizens for Responsible Wildlife Mgmt.*, 149 Wn.2d at

642). By reading Section 430, one would understand that the proportional share

reimbursement process avoids triggering the responsibility for full reimbursement

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

required by the unfunded mandate statute. This express reference to the unfunded mandate statute resolves any potential "'confusion, ambiguity, and uncertainty,'" which is the exact concern that this part of the test aims to avoid. *Id*. (quoting *Amalg. Transit Union*, 142 Wn.2d at 245). Further, ESHB 2421 is a complete act because it "'stand[s] alone as the law'" on election costs. *Amalg. Transit Union*, 142 Wn.2d at 246 (alteration in original) (quoting *Living Servs.*, 95 Wn.2d at 756).

WSAC and the Counties rely on *Weyerhaeuser* to argue that ESHB 2421 is an amendment and not a complete act because it "'changes a prior act in scope and effect'" and therefore violates article II, section 37. Br. of Resp'ts at 31 (quoting *Weyerhaeuser Co. v. King County*, 91 Wn.2d 721, 731, 592 P.2d 1108 (1979)). This court has cautioned against reading *Weyerhaeuser* "too broadly" because that decision states the test in simplified terms and fails to acknowledge the exception that has been carved out for complete acts: "*Weyerhaeuser*'s statement that the need to look to two acts to know the law means that the later act is not a complete act and is too broad." *Amalg. Transit Union*, 142 Wn.2d at 251. A complete act, such as ESHB 2421, "may very well change prior acts and is [still] exempt from the requirement of article II, section 37." *Id.* at 252.

The State argues that Section 430 is permissible as a "'reference statute,' which 'refer[s] to other statutes and make[s] them applicable to the subject of the legislation.'" State's Opening Br. at 28 (alterations in original) (quoting *Black*,

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

195 Wn.2d at 207). Reference statutes are used to "'avoid encumbering the statute books by unnecessary repetition'" and are "not within the restriction contemplated by [article II, section 37]." *State v. Rasmussen*, 14 Wn.2d 397, 402, 128 P.2d 318 (1942) (quoting 25 R.C.L. 907, § 160). Section 430 is a reference statute because subsection (2) incorporates the unfunded mandate statute in order to explain that funding provided by the election cost statutes is sufficient even though it does not constitute full reimbursement, as required by the unfunded mandate statute.

Turning to the second part of our test for reviewing an article II, section 37 challenge, we consider "whether 'a straightforward determination of the scope of rights or duties under the existing statutes [would] be rendered erroneous by the new enactment.'" *El Centro de la Raza*, 192 Wn.2d at 129 (alteration in original) (internal quotation marks omitted) (quoting *Manussier*, 129 Wn.2d at 663). A statute will not satisfy this part of the test if it "requires a thorough search of existing laws in order to understand the Act's effect on other provisions." *Id.* at 131.

The new enactment, Section 430, could render a reading of the existing unfunded mandate statute erroneous because it provides a different amount of reimbursement for election costs. However, this part of the test is not so simple. Section 430 does not require a "'thorough search of existing laws' that are unreferenced to understand the statute's effect" because subsection (2) expressly

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

references the unfunded mandate statute. *Black*, 195 Wn.2d at 211. This reference "provides all the necessary information readers must know to understand their rights affected by the . . . statute." *Id.* at 213.

WSAC and the Counties also argue that a statute must contain the term "notwithstanding" to convey the impact on existing laws. Br. of Resp'ts at 38-39. This term was included in the statute at issue in *Black*, making it clear that this provision controlled over any related statutes. 195 Wn.2d at 212. WSAC and the Counties assume that this term must be included to avoid violating article II, section 37. However, a closer look at the analysis in *Black* reveals that the inclusion of "notwithstanding" merely provided additional support to this court's conclusion that the statute in question was "clear in its effect." *Id.* at 211 ("We reach the same conclusion on the . . . statute's constitutionality when we consider the 'notwithstanding' language used in the . . . statute."). There is no requirement that the term "notwithstanding" must be included in a statute to make its effect clear.

The express reference to the unfunded mandate statute eliminates the confusion and uncertainty that article II, section 37 intended to avoid. The 2020 amendment of Section 430 does not violate article II, section 37 because ESHB 2421 is a complete act and does not render a straightforward determination of rights pursuant to an existing statute erroneous.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

C.      The retroactive effect of RCW 29A.04.430(2) is valid because the Counties do not have a vested right to full reimbursement

Finally, we turn to the issue of whether the retroactive effect of Section 430 deprives the Counties of their "vested rights" to full reimbursement pursuant to the unfunded mandate statute. In the order granting partial summary judgment, the trial court found that the Counties had a vested right to full reimbursement because they "have spent substantial funds in order to comply with the State's ballot [box statute]." CP at 800. The trial court relied on this court's decision in *Gillis*, which states, "'A statute may not be given retrospective effect, regardless of the intention of the legislature, where the effect would be to interfere with vested rights.'" *Id.* (quoting *Gillis v. King County*, 42 Wn.2d 373, 376, 255 P.2d 546 (1953)). The Counties raise this argument here and claim that the retroactive effect of Section 430 "creates such an interference" because the Counties had spent money "presuming [they] would receive full reimbursement under [the unfunded mandate] before ESHB 2421 passed" and that such expenditures created a vested right. Br. of Resp'ts at 41. We disagree.

The challenged provision is Section 430, which establishes that funding pursuant to this provision is "retrospective and prospective reimbursement under RCW 43.135.060." RCW 29A.04.430(2). "Unquestionably, the Legislature has the power to enact a retrospective statute, unless the statute contravenes some constitutional inhibition." *Lawson v. State*, 107 Wn.2d 444, 454, 730 P.2d 1308

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

(1986) (citing *State v. Douty*, 92 Wn.2d 930, 935, 603 P.2d 373 (1979)). Because the legislature's intent to make this provision retroactive is explicit in the language of the statute, we must determine whether the retroactive effect "deprive[s] one of property without due process of law" by denying the Counties full reimbursement in accordance with the unfunded mandate statute. *Lawson*, 107 Wn.2d at 455 (citing *Gillis*, 42 Wn.2d at 376). The Counties can claim a right to full reimbursement only if such rights have vested.

A "vested right" is "something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another." *Godfrey v. State*, 84 Wn.2d 959, 963, 530 P.2d 630 (1975) (emphasis omitted). Additionally, "the term has been commonly held to connote 'an immediate, fixed right of present or future enjoyment.'" *Adams v. Ernst*, 1 Wn.2d 254, 264-65, 95 P.2d 799 (1939) (quoting *Pearsall v. Great N. Ry. Co.*, 161 U.S. 646, 673, 16 S. Ct. 705, 40 L. Ed. 838 (1896)). This court's decisions over the years show that a vested right must be definite, as opposed to an assumed expectation that one will be able to exercise a certain privilege in the future.

Even if we are to assume that political subdivisions could acquire vested rights, the Counties' rights to full reimbursement had not vested by the time

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

Section 430 was amended.[5]  There are a number of ways a right can vest: final judgment, contract, or completion of statutory requirements for relief.

First, a right can become vested if it is secured by a final judgment.  This comes from our decision in *Bailey*, where we stated that "[t]he appellant had no vested right, *prior to judgment*, in a policy of legislation which entitled [them] to insist that the policy be maintained for [their] benefit."  *Bailey v. School Dist. No. 49*, 108 Wash. 612, 614, 185 P. 810 (1919) (emphasis added); *see also Johnson v. Cont'l W., Inc.*, 99 Wn.2d 555, 563, 663 P.2d 482 (1983) ("[N]o one can be said to have had a vested right until the cases were finally resolved on appeal and a final judgment entered.").  As the State correctly argues, the Counties cannot point to any final judgment that would have secured their rights to reimbursement pursuant to the unfunded mandate statute.

Rights may also vest if they are included in a contractual agreement.  In *Scott Paper Co. v. City of Anacortes*, this court declined to apply a statute retroactively as it would "vitiate a crucial aspect of the . . . contract."  90 Wn.2d 19, 32, 578 P.2d 1292 (1978).  There is no contract in this case that would have vested the Counties' rights to full reimbursement.

---

[5] Because this doctrine is rooted in the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, constitutional protections that have never been applied to subdivisions of the State, it is questionable whether the Counties could have such vested rights at all.  *See City of Trenton v. New Jersey*, 262 U.S. 182, 188, 43 S. Ct. 534, 67 L. Ed. 937 (1923); *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40, 53 S. Ct. 431, 77 L. Ed. 1015 (1933).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Finally, rights may become vested "upon completion of the statutory conditions" in certain situations. *State v. T.K.*, 139 Wn.2d 320, 334, 987 P.2d 63 (1999). In *T.K.,* this court concluded that the "right to sealing became absolute upon completion of the statutory conditions," after the two-year time period had expired. *Id*. The court compared that time period to a statute of limitations, after which the defense would become "'absolute and vested.'" *Id.* (quoting *State v. Hodgson*, 108 Wn.2d 662, 668, 740 P.2d 848 (1987)). The Counties assert that they completed the "statutory requirements for relief against the State" when they spent money to comply with the ballot box statute, which is an unfunded mandate. Br. of Resp'ts at 42 (citing *T.K.*, 139 Wn.2d at 334). However, there is no way for us to determine whether the Counties have in fact completed the statutory requirements such that their rights could automatically vest upon completion.

The unfunded mandate statute does not include requirements for relief, nor does it contain a time period for completing such conditions comparable to the statute considered in *T.K.* The statute merely imposes a duty on the State to provide full reimbursement for new or increased responsibilities. In a 1981 opinion, the Attorney General's Office noted that a violation of the unfunded mandate statute could "establish the underlying legal basis for a claim on the part of any affected taxing district for reimbursement by the state whenever any legislation coming within its purview is enacted." 1981 Op. Att'y Gen. No. 5, at

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

11. Based on this opinion, the right to reimbursement pursuant to the unfunded mandate statute could become vested only upon a final judgment confirming that the unfunded mandate statute is applicable. As discussed previously, a final judgment declaring that the ballot box statute is an unfunded mandate has not been entered.

The Counties' claim of entitlement to full reimbursement pursuant to the unfunded mandate statute is best described as a mere expectation. They immediately complied with the ballot box statute, assuming that the unfunded mandate statute would apply and would require the State to provide full reimbursement. Without a more definite entitlement, such as a final judgment, contract, or specific statutory requirements for relief, it cannot be said that the Counties had a vested right to full reimbursement.

The Counties had no right to full reimbursement and thus such "rights" could not be interfered with by the enactment of retroactive legislation. The legislature acted within its authority to limit the applicability of the unfunded mandate statute. Therefore, the retroactive effect of Section 430 is valid.

## CONCLUSION

We hold that Section 430 is a more specific statute and thus controls the amount of reimbursement that the State must provide for election costs incurred by the Counties. The Counties are entitled to reimbursement only for the State's

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Wash. State Ass'n of Counties et al., v. State*, No. 99230-4

proportional share of costs.  Further, we hold that the 2020 amendment of Section 430 does not violate article II, section 37, and that the Counties do not have a vested right to full reimbursement.  We therefore reverse the order granting partial summary judgment to the Counties and remand to the trial court for further proceedings consistent with this opinion.

_____
Yu, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

_____
Stephens, J.

_____
Gordon McCloud, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.

24