162 P.3d 420 (2007)
STATE of Washington, Respondent,
v.
Samuel Asseta TESSEMA, Appellant.
No. 57844-8-1.
Court of Appeals of Washington, Division 1.
May 29, 2007.
Publication Ordered July 16, 2007.
*422 Lila Jane Silverstein, Washington Appellate Project, Seattle, WA, for Appellant.
Dennis John McCurdy, King County Prosecutor's Office, Seattle, WA, for Respondent.
BAKER, J.
¶ 1 Samuel Tessema was convicted of assault in the second degree while armed with a firearm. He appeals his conviction, arguing the firearm enhancement imposed on him is unconstitutional under article II, section 37, violates the constitutional prohibition against double jeopardy, and was improperly imposed because the legislature enacted no procedure by which the jury could make a finding under the statute that he was armed with a firearm. We reject these arguments, and affirm.

I.
¶ 2 Michael Tverskoy is a manager of a parking garage in downtown Seattle. On August 16, 2005, he had a confrontation with one of his employees, Samuel Tessema. Tverskoy noticed that Tessema had his uniform shirt untucked. Tverskoy had repeatedly told Tessema that he needed to keep his shirt tucked in in order to maintain a professional appearance while working. He had warned Tessema just the day before that the next time he wore his shirt untucked, he would be sent home before the end of his shift.
¶ 3 Tverskoy met with Tessema inside the parking lot attendant's station, and asked Tessema if he remembered the warning. Tessema said he did. Tverskoy then told him to go home, and Tessema joked that all he needed to do whenever he wanted to leave early was untuck his shirt. When Tverskoy told him that doing so would eventually result in his being fired, Tessema became abusive *423 and began yelling and shouting at Tverskoy, and calling him "evil."
¶ 4 Tessema had already been written up for screaming at managers six months previously. Tverskoy told Tessema that because he was yelling, he would not be allowed to return to work without permission from the top manager. Tessema continued to hurl abuse at Tverskoy as Tverskoy turned to help some customers waiting to leave the garage. After the customers drove away, Tverskoy heard a distinctive click behind him, which he knew from prior experience to be the click of a firearm.
¶ 5 He turned to find Tessema pointing a pistol at his head. Tessema continued yelling, and threatened to kill Tverskoy.
¶ 6 Tverskoy tried to calm Tessema, to no avail. Tessema then began beating Tverskoy with his hand, and perhaps with the butt of the gun as well. Tverskoy did not fight back, for fear of provoking Tessema to greater rage. Finally, unable to stand the blows any longer, he turned away from Tessema, so that if he were shot he would not have to see it coming. Tessema continued to berate Tverskoy, and threatening to kill him. He hit Tverskoy a few more times before finally leaving the attendant's station and fleeing the garage.
¶ 7 Tessema was arrested a few hours later. After his arrest, he consented to a search of his home, where a handgun was found under the mattress of his bed.
¶ 8 He was charged with second degree assault in violation of RCW 9A.36.021(1)(c), and further charged with being armed with a handgun at the time of the assault, in violation of RCW 9.94A.533.[1] He was convicted by a jury, which entered a special verdict finding that he was armed with a firearm at the time of the assault.

II.
¶ 9 The interpretation of a statute and the determination of whether a statute violates the constitution are issues of law that are reviewed de novo.[2] Where the constitutionality of a statute is challenged, the statute is presumed constitutional, and the burden is on the party challenging the statute to prove its unconstitutionality beyond a reasonable doubt.[3] Courts are generally hesitant to strike a duly enacted statute unless fully convinced that the statute violates the constitution.[4] If possible, a statute should be construed as constitutional.[5]
¶ 10 Tessema argues that the imposition of the firearms enhancement was improper because the "Hard Time for Armed Crime" initiative violated article II, section 37 of the Washington Constitution.
¶ 11 Article II, section 37 provides that:
No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length.
¶ 12 This section is intended to protect the legislature and public from fraud and deception,[6] and to avoid confusion, ambiguity and uncertainty.[7] The purpose of article II, section 37 is to disclose the effect of new legislation and its impact on existing laws.[8] It applies equally to bills and initiatives.[9]
¶ 13 The sentence enhancement statute, RCW 9.94A.533, was enacted without amendment *424 after the voters sent Initiative 159 to the legislature. The statute mandates additional punishment for crimes committed with a firearm, and imposes mandatory sentencing enhancements if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010.[10] The statute applies to all felonies except possession of a machine gun, possessing a stolen firearm, drive-by shooting, theft of a firearm, unlawful possession of a firearm in the first and second degree, and use of a machine gun in a felony.[11]
¶ 14 Tessema argues that the penalty imposed under RCW 9.94A.533 is unconstitutional because Initiative 159 did not set forth in full the second degree assault statute. He argues that the sentencing enhancement provisions of RCW 9.94A.533 revise or amend the assault statute, and because the assault statute was not laid out in full in the initiative, the sentence enhancements run afoul of article II, section 37.
¶ 15 Article II, section 37 sought to remedy the practice of amending or revising laws by additions or alterations which, without the presence of the original law, were usually unintelligible.[12] An act is exempt from the requirements of article II, section 37 if the act is "`complete in itself, independent of prior acts, and stand[s] alone as the law on the particular subject of which it treats.'"[13] If the new act is not complete, but refers to a prior statute which is changed but not repealed by the new act, one is required to read both statutes before the full declaration of the legislative will on the subject can be ascertained.[14]
¶ 16 Our Supreme Court has set out a two-part test for determining if a law violates section 37:
1. Is the new enactment such a complete act that the scope of the rights or duties created or affected by the legislative action can be determined without referring to any other statute or enactment?
2. Would a straightforward determination of the scope of rights or duties under the existing statutes be rendered erroneous by the new enactment?[15]
¶ 17 RCW 9.94A.533 did not revise or amend the second degree assault statute, RCW 9A.36.021. RCW 9.94A.533 is a sentencing act, and is complete in itself without requiring reference to other statutes to understand its purpose and meaning.
¶ 18 The mischief designed to be remedied by article II, section 37 was the enactment of amendatory statutes in terms that sometimes caused legislators and the public to be deceived in regard to their effect, due to the difficulty in making the necessary examination and comparison to existing statutes when not apprised of changes made in other laws.[16] Article II, section 37 was not intended to prohibit the passage of a law which declares fully its provisions without direct reference to any other act, even if the legislation incidentally or impliedly amends other statutes.[17] An act which is supplementary rather than amendatory need not set forth in full the section of the act it supplements.[18]
¶ 19 In State v. Thorne,[19] our Supreme Court upheld the Persistent Offender Accountability Act[20] (the Three Strikes and *425 You're Out initiative) and held it did not violate article II, section 37, because it was a complete act and the penalties it imposed could be determined without reference to other statutes.[21] The court reiterated that the purpose of the constitutional article is to protect members of the legislature and the public against fraud and deception  not to trammel or hamper the legislature in the enactment of laws.[22] It noted that the effect of the statute was obvious from its language, and cited numerous cases upholding the proposition that article II, section 37 is not violated when complete acts incidentally or impliedly amend prior acts.
¶ 20 RCW 9.94A.533 is such a complete act. The scope of the rights or duties created by the act can be determined without referring to any other statute or enactment. It is supplementary rather than amendatory. Its language and intent are plain: those committing all but a handful of expressly reserved felonies while armed with a firearm are subject to additional penalties.
¶ 21 A complete act, not revisory in character, is not rendered unconstitutional by article II, section 37, even though it may by implication operate to change or modify prior acts.[23] RCW 9.94A.533 has incidental effects on other statutes, in this case on the second degree assault statute. But, it does not in any way modify the statute, even by implication. RCW 9A.36.021 sets out the elements of assault in the second degree. It does not address the punishment imposed upon conviction. A straightforward determination of the scope of rights or duties under existing statutes, such as the second degree assault statute, is not changed by RCW 9.94A.533.
¶ 22 Tessema also cites to Blakely v. Washington[24] for the proposition that a sentence enhancement is indistinguishable from an element of a crime, so that the act consequently amends various criminal statutes, including the assault statute. Blakely, however, has no direct relevance here. In Blakely, the United States Supreme Court held that a criminal defendant has a Sixth Amendment right to have a jury determine beyond a reasonable doubt any aggravating fact, other than the fact of a prior conviction, that is used to impose greater punishment than the standard range or standard conditions.[25]Blakely has no relation to the issue of statutory amendment or revision under article II, section 37 in the present case.
¶ 23 RCW 9.94A.533 satisfies the two-part test laid out in Washington Education Association v. State.[26] Tessema has not met the heavy burden of establishing its unconstitutionality beyond a reasonable doubt. We hold that it does not violate article II, section 37 of the constitution.
¶ 24 Tessema also asserts that his sentence violates double jeopardy, and that the trial court exceeded its authority at sentencing when it imposed a firearm enhancement in the absence of a statutory procedure for doing so. Both these issues were squarely addressed and dismissed by this court in State v. Nguyen.[27]
¶ 25 In Nguyen, we first noted that it is well settled that sentence enhancements for offenses committed with weapons do not violate double jeopardy, even where the use of a weapon is an element of the crime. Nguyen contended that the rule needed to be reexamined in light of Blakely. Like Tessema, Nguyen argued that the voters did not consider the problem of redundant punishment when they passed Initiative 159.[28] We dismissed Nguyen's double jeopardy argument.[29] Unless the question involves the *426 consequences of a prior trial, double jeopardy analysis is an inquiry into legislative intent.[30] The intent underlying the mandatory firearm enhancement is unmistakable: the use of firearms to commit crimes shall result in longer sentences unless an exemption applies.[31] Consequently, double jeopardy was not implicated.
¶ 26 Tessema also argues that voters signing the petition cannot be said to have intended redundant punishment when they had no notice that the assault statute already provided for punishment for use of a weapon. As we noted in Nguyen:
Where possession of the firearm is itself the crime, the enhancement is unnecessary to the statutory purpose. It is therefore unsurprising that the offenses of theft of firearms and possession of a machine gun are exempt from the enhancements. The legislature also, however, exempted drive-by shooting and use of a machine gun in a felony, which demonstrates that whether use of a firearm is an element of the crime is not the test for the enhancement. Any "redundancy" in mandating enhanced sentences for other offenses involving use of a firearm is intentional.[[32]]
¶ 27 Like Nguyen, Tessema argues that imposition of the firearm enhancement was improper because the legislature has enacted no procedure by which the jury could make such a finding. This argument is without merit.
¶ 28 Tessema argues that under State v. Hughes,[33] where "the legislature has not created a procedure for juries to find aggravating factors . . . we refuse to imply such a procedure on remand."[34] However, the Hughes court addressed only the issue of an appropriate remedy on remand, noting "we do not decide here whether juries may be given special verdict forms or interrogatories to determine aggravating factors at trial."[35]
¶ 29 Furthermore, while the firearm enhancement statute itself sets forth no procedure, the Legislature has given juries precisely the means to make the sort of finding Tessema says is lacking.[36] RCW 9.94A.602 authorizes a special allegation and jury finding as to whether the defendant was armed with a deadly weapon. The statute's list of deadly weapons includes: "Blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm."[37]
¶ 30 We rejected a similar argument in Nguyen, noting that to the extent express authority is required, the deadly weapon special verdict statute supplies it.[38] A firearm is a type of deadly weapon, expressly included in the statutory definition. The jury in this case returned a special verdict and found that Tessema was armed with a firearm at the time the crime was committed. The procedural statute did not need amendment merely because the legislature created differing penalties for different deadly weapons.[39] We again affirm that the enhancement statutes amply authorize the firearm finding.[40]
*427 ¶ 31 Tessema submitted a pro se brief, as well as a statement of additional grounds for review. In them, he raises a number of issues, largely disputing conclusions the jury drew from evidence presented at trial. Those issues will not be addressed. He also asserts ineffective assistance of counsel. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense.[41]
¶ 32 Tessema fails to show that counsel's performance was deficient, certainly not so deficient as to prejudice his defense.
¶ 33 AFFIRMED.
WE CONCUR: SCHINDLER, A.C.J., and BECKER, J.
NOTES
[1] The information and judgment and sentence cite to RCW 9.94A.510(3). That statute was recodified as the current RCW 9.94A.533 in 2003.
[2] In re Parentage of C.A.M.A., 154 Wash.2d 52, 57, 109 P.3d 405 (2005).
[3] Tunstall v. Bergeson, 141 Wash.2d 201, 220, 5 P.3d 691 (2000).
[4] Tunstall, 141 Wash.2d at 220, 5 P.3d 691.
[5] State v. Farmer, 116 Wash.2d 414, 419-20, 805 P.2d 200, 812 P.2d 858 (1991).
[6] Spokane Grain & Fuel Co. v. Lyttaker, 59 Wash. 76, 82, 109 P. 316 (1910), overruled on other grounds, Washington Fed'n of State Employees, Council 28 v. State, 101 Wash.2d 536, 682 P.2d 869 (1984).
[7] State ex rel. Gebhardt v. Superior Court for King County, 15 Wash.2d 673, 685, 131 P.2d 943 (1942).
[8] Washington Educ. Ass'n v. State, 93 Wash.2d 37, 39, 604 P.2d 950 (1980).
[9] State v. Thorne, 129 Wash.2d 736, 753, 921 P.2d 514 (1996).
[10] RCW 9.94A.533(3), (4).
[11] RCW 9.94A.533(3)(f).
[12] Yelle v. Bishop, 55 Wash.2d 286, 299, 347 P.2d 1081 (1959).
[13] Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 246, 11 P.3d 762 (2000) (quoting State ex rel. Living Servs., Inc. v. Thompson, 95 Wash.2d 753, 756, 630 P.2d 925 (1981)).
[14] Amalgamated, 142 Wash.2d at 246, 11 P.3d 762.
[15] Washington Educ. Ass'n v. State, 97 Wash.2d 899, 903, 652 P.2d 1347 (1982).
[16] Yelle, 55 Wash.2d at 299, 347 P.2d 1081.
[17] Yelle, 55 Wash.2d at 299, 347 P.2d 1081; Vasey v. Snohomish County, 44 Wash.App. 83, 96-97, 721 P.2d 524 (1986).
[18] Bellingham v. Hite, 37 Wash.2d 652, 655-56, 225 P.2d 895 (1950).
[19] 129 Wash.2d 736, 921 P.2d 514 (1996).
[20] RCW 9.94A.555.
[21] Thorne, 129 Wash.2d at 754-55, 921 P.2d 514.
[22] Thorne, 129 Wash.2d at 755-56, 921 P.2d 514.
[23] State v. Manussier, 129 Wash.2d 652, 664-665, 921 P.2d 473 (1996).
[24] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[25] State v. Pillatos, 159 Wash.2d 459, 468 n. 5, 150 P.3d 1130 (2007).
[26] 97 Wash.2d 899, 903, 652 P.2d 1347 (1982).
[27] 134 Wash.App. 863, 142 P.3d 1117 (2006).
[28] Nguyen, 134 Wash.App. at 867-68, 142 P.3d 1117.
[29] Nguyen, 134 Wash.App. at 868, 142 P.3d 1117.
[30] Nguyen, 134 Wash.App. at 868, 142 P.3d 1117.
[31] Nguyen, 134 Wash.App. at 868, 142 P.3d 1117.
[32] Nguyen, 134 Wash.App. at 868, 142 P.3d 1117.
[33] 154 Wash.2d 118, 110 P.3d 192 (2005), overturned on other grounds, Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). Recuenco contended that the Washington legislature provided no procedure by which a jury could decide at trial whether a defendant was armed with a firearm, as opposed to a deadly weapon. The court noted that it was far from clear that his interpretation of Washington law was correct. Recuenco, 126 S.Ct. at 2550. The court made no determination on that score.
[34] Hughes, 154 Wash.2d at 150, 110 P.3d 192.
[35] Hughes, 154 Wash.2d at 149, 110 P.3d 192.
[36] Nguyen, 134 Wash.App. at 870, 142 P.3d 1117.
[37] RCW 9.94A.602 (emphasis added).
[38] Nguyen, 134 Wash.App. at 870, 142 P.3d 1117.
[39] Nguyen, 134 Wash.App. at 870, 442 P.3d 1117.
[40] Nguyen, 134 Wash.App. at 871, 142 P.3d 1117.
[41] In re Pers. Restraint of Stenson, 142 Wash.2d 710, 720, 16 P.3d 1 (2001) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).