# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ASSOCIATED GENERAL CONTRACTORS OF WASHINGTON, a Washington Nonprofit Corporation; ASSOCIATED BUILDERS AND CONTRACTORS OF WESTERN WASHINGTON, INC., a Washington Nonprofit Corporation; INLAND PACIFIC CHAPTER OF ASSOCIATE BUILDERS AND CONTRACTORS, INC., a Washington Nonprofit Corporation; and INLAND NORTHWEST AGC, INC., a Washington Nonprofit Corporation, | No.  54465-2-II |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON; JAY INSLEE, Governor; JOEL SACKS, Director of Washington State Department of Labor & Industries; and JIM CHRISTENSEN, Washington State Department of Labor and Industries Program Manager and Industrial Statistician, Prevailing Wage Program; in their official capacities, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, J. — Appellants Associated General Contractors of Washington, Associated Builders

and Contractors of Western Washington, Inc., Inland Pacific Chapter of Associate Builders and

Contractors, Inc., and Inland Northwest AGC, Inc. (collectively AGC) appealed the superior

court's summary judgment order stating that Substitute Senate Bill (SSB) 5493,[1] codified at RCW

---

[1]  SUBSTITUTE S.B. (S.S.B.) 5493, 65th Leg., Reg. Sess. (Wash. 2018).

39.12.015(3), did not violate the non-delegation doctrine, due process, equal protection, or article II, section 37 of the Washington Constitution. *Associated Gen. Contractors of Wash. v. State*, 19 Wn. App. 2d 99, 108, 494 P.3d 443 (2021) (*AGCW I*). We reversed the superior court, holding that RCW 39.12.015(3) violated the non-delegation doctrine and declined to address article II, section 37 in light of our holding regarding the non-delegation doctrine.[2] *Id.* at 112. The Supreme Court reversed, holding there was no violation of the non-delegation doctrine, and remanded to this court to address "the issue not reached because of its disposition of the case." *Associated Gen. Contractors of Wash. v. State*, 200 Wn.2d 396, 416, 518 P.3d 639 (2022) (*AGCW II*). We now address whether RCW 39.12.015(3) violates article II, section 37.

Because RCW 39.12.015(3) renders a straightforward determination of the scope of rights or duties under RCW 39.12.026(1) erroneous, RCW 39.12.015(3) violates article II, section 37 of the Washington Constitution. Accordingly, we reverse the superior court's summary judgment order on the issue of article II, section 37 and remand for further proceedings.

FACTS

A.     PREVAILING WAGES ON PUBLIC WORKS ACT

Under Washington's Prevailing Wages on Public Works Act (Act), chapter 39.12 RCW, employers must pay the "prevailing rate of wage" to employees who perform work on public projects. *See* RCW 39.12.010. The Department of Labor and Industries (L&I) Industrial Statistician determines the prevailing wage rates for all public works contracts twice a year. RCW 39.12.015(1); WAC 296-127-011(1). The "prevailing rate of wage" is defined:

---

[2] We also declined to address due process and equal protection arguments based on insufficient briefing. *AGCW I*, 19 Wn. App. 2d at 101 n.3.

> The "prevailing rate of wage" is the rate of hourly wage, usual benefits, and overtime paid in the locality, as hereinafter defined, to the majority of workers, laborers, or mechanics, in the same trade or occupation. In the event that there is not a majority in the same trade or occupation paid at the same rate, then the average rate of hourly wage and overtime paid to such laborers, workers, or mechanics in the same trade or occupation is the prevailing rate. If the wage paid by any contractor or subcontractor to laborers, workers, or mechanics on any public work is based on some period of time other than an hour, the hourly wage is mathematically determined by the number of hours worked in such period of time.

RCW 39.12.010(1). A "locality" is the largest city in a county where work is performed. RCW 39.12.010(2). The industrial statistician may establish the prevailing wage county by county through wage and hour surveys, among other methods. WAC 296-127-019(1). "In establishing the prevailing rate of wage . . . all data collected by the department of labor and industries may be used only in the county for which the work was performed." RCW 39.12.026(1).

B.       SUBSTITUTE SENATE BILL 5493

In 2018, the Washington State Legislature amended the Act through SSB 5493. Specifically, the amendment revised RCW 39.12.015 by modifying the way in which the industrial statistician calculates the prevailing wage rates for public works projects. S.S.B. 5493. SSB 5493/amended RCW 39.12.015 states:

> Except as provided in RCW 39.12.017, and notwithstanding RCW 39.12.010(1), the industrial statistician shall establish the prevailing rate of wage by adopting the hourly wage, usual benefits, and overtime paid for the geographic jurisdiction established in collective bargaining agreements for those trades and occupations that have collective bargaining agreements [CBAs]. For trades and occupations with more than one collective bargaining agreement in the county, the higher rate will prevail.

RCW 39.12.015(3)(a).[3] If multiple CBAs exist within a county, the industrial statistician must adopt the highest rate. RCW 39.12.015(3)(a). If no CBA exists for a particular trade or occupation, then the industrial statistician establishes the prevailing wage as defined in RCW 39.12.010(1)—the original method prior to the amendment of RCW 39.12.015 by SSB 5493. RCW 39.12.015(3)(b).

C.      PROCEDURAL HISTORY

In January 2019, AGC filed suit against the State of Washington, Governor Jay Inslee, L&I Director Joel Sacks, and L&I Industrial Statistician Jim Christensen, in their official capacities (collectively the State), challenging the constitutionality of SSB 5493. AGC sought declaratory and injunctive relief, and moved for a preliminary injunction. AGC argued that SSB 5493 was (1) an unconstitutional delegation of legislative authority, (2) violated due process, (3) violated equal protection, and (4) violated article II, section 37 of the Washington State Constitution.

The trial court denied AGC's motion for a preliminary injunction. Both parties then moved for summary judgment.

During the summary judgment hearing, AGC argued that the language of SSB 5493 conflicted with RCW 39.12.010 and RCW 39.12.026, making it unconstitutional. The State, on the other hand, argued no conflict existed between SSB 5493 and RCW 39.12.010 or RCW 39.12.026. In regard to RCW 39.12.026, the State asserted, "[T]hat doesn't have anything to do with this case because it has—it's about wage surveys . . . this isn't a wage survey issue here. We

---

[3] In 2019, the legislature again amended RCW 39.12.015. H.B. 1743, 66th Leg., Reg. Sess. (Wash. 2019). The pertinent language from the 2018 amendment remained the same in the 2019 amendment. The parties refer to the numbering of the current statute. Therefore, this opinion will also refer to the numbering of the current statute.

have collective bargaining agreements which are at issue. So that statute just simply doesn't apply." Verbatim Rep. of Proc. (VRP) (Dec. 27, 2019) at 17-18. The trial court granted the State's motion for summary judgment "for the reasons articulated by the [State]" and denied AGC's motion for summary judgment. VRP (Dec. 27, 2019) at 20. The trial court's order stated, "SSB 5493 does not violate . . . article II, section 37 of the Washington Constitution." Clerk's Papers at 2538. AGC appealed to this court.

We reversed the trial court, holding that SSB 5493, codified at RCW 39.12.015(3), violated the non-delegation doctrine because "it mandate[d] the use of schedule wage rate lists in CBAs after its enactment to establish prevailing wages." *AGCW I*, 19 Wn. App. 2d at 109. We declined to address AGC's claim that the statute violated article II, section 37 of the Washington Constitution in light of our holding that the statute violated the non-delegation doctrine. *Id.* at 101 n.4.

The Supreme Court reversed, holding that RCW 39.12.015(3) did not violate the non-delegation doctrine. *AGCW II*, 200 Wn.2d at 415. The Court then remanded "to the Court of Appeals for consideration of the issue not reached because of its disposition of the case." *Id.* at 416. Because we did not reach the issue of article II, section 37 based on our prior holding, we now consider on remand whether RCW 39.12.015(3) violates article II, section 37 of the Washington Constitution.

## ANALYSIS

### A. STANDARD OF REVIEW

We review summary judgment orders de novo. *Davies v. MultiCare Health Sys.*, 199 Wn.2d 608, 616, 510 P.3d 346 (2022). Summary judgment is appropriate when "there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

Appellate courts "also review constitutional questions and statutory interpretation de novo." *Black v. Cent. Puget Sound Reg'l Transit Auth.*, 195 Wn.2d 198, 204, 457 P.3d 453 (2020). "Where the constitutionality of a statute is challenged, the statute is presumed constitutional." *State v. Tessema*, 139 Wn. App. 483, 488, 162 P.3d 420 (2007), *review denied*, 163 Wn.2d 1018 (2008). The party challenging the statute bears the burden of proving its unconstitutionality beyond a reasonable doubt. *Id.* "This standard is met if argument and research show that there is no reasonable doubt that the statute violates the constitution." *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762 (2000).

The purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. *Birgen v. Dep't of Lab. & Indus.*, 186 Wn. App. 851, 857, 347 P.3d 503, *review denied*, 184 Wn.2d 1012 (2015). Courts derive legislative intent from the plain language of the statute, "considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014). Courts may use dictionary definitions to discern the plain meaning of terms undefined by statute. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395, 325 P.3d 904 (2014).

B.      WASHINGTON CONSTITUTION ARTICLE II, SECTION 37

1.      Legal Principles

Article II, section 37 of the Washington Constitution provides: "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set

forth at full length." Article II, section 37 is intended to "protect the legislature and the public against fraud and deception," and its purpose is to disclose the impact of new legislation on existing laws. *Black*, 195 Wn.2d at 205. Article II, section 37 "applies equally to bills and initiatives." *Tessema*, 139 Wn. App. at 489.

        a.     Two-prong test

Courts employ a two-part test to determine if a statute violates article II, section 37. *Black*, 195 Wn.2d at 205; *accord Wash. State Legislature v. Inslee*, 198 Wn.2d 561, 592, 498 P.3d 496 (2021) (analyzing the "two-step framework [applied] to article II, section 37 challenges."). Both prongs of the test are necessary in an article II, section 37 analysis. *Black*, 195 Wn.2d at 205.

First, courts must assess whether a statute is a "'complete act,'" meaning "the rights or duties under the statute can be understood without referring to another statute." *Id.* (internal citation omitted) (quoting *El Centro de la Raza v. State*, 192 Wn.2d 103, 128, 428 P.3d 1143 (2018) (plurality opinion)). In other words, the rights or duties conferred by statute must be readily ascertainable from the statute's text alone. *Id.* at 206. The purpose of this first step is to avoid confusion, ambiguity, and uncertainty in the law through disconnected legislative provisions. *Id.* "Complete acts which (1) repeal prior acts or sections thereof on the same subject, (2) adopt by reference provisions of prior acts, (3) supplement prior acts or sections thereof without repealing them, or (4) incidentally or impliedly amend prior acts are excepted from section 37." *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 642, 71 P.3d 644 (2003); *accord Black*, 195 Wn.2d at 205 (holding that complete acts that adopt other statutes by reference satisfy the first prong).

Second, courts must evaluate whether the amendment renders a straightforward determination of the rights or duties under existing statutes erroneous. *Black*, 195 Wn.2d at 210. A straightforward understanding of the rights granted or duties imposed under an existing statute become erroneous when the amendment creates a conflict or alters criteria. *Inslee*, 198 Wn.2d at 594-95. A complete act may still violate article II, section 37 if it fails to inform readers how an amendment impacts or modifies rights or duties created by other statutes. *Black*, 195 Wn.2d at 210.

          b.      RCW 39.12.010(1)

RCW 39.12.010(1) provides a method of determining the "prevailing rate of wage." The prevailing rate is:

> the rate of hourly wage, usual benefits, and overtime *paid in the locality, as hereinafter defined, to the majority of workers, laborers, or mechanics, in the same trade or occupation*. In the event that there is not a majority in the same trade or occupation paid at the same rate, then the average rate of hourly wage and overtime paid to such laborers, workers, or mechanics in the same trade or occupation is the prevailing rate. If the wage paid by any contractor or subcontractor to laborers, workers, or mechanics on any public work is based on some period of time other than an hour, the hourly wage is mathematically determined by the number of hours worked in such period of time.

RCW 39.12.010(1) (emphasis added). Under RCW 39.12.010(2), a "locality" is "the largest city in the county wherein the physical work is being performed."

RCW 39.12.026(1) limits the sources of data used by the industrial statistician to set the prevailing wage by county. RCW 39.12.026(1) states: "In establishing the prevailing rate of wage under RCW 39.12.010, 39.12.015, and 39.12.020, all data collected by the department of labor and industries may be used only in the county for which the work was performed."

8

> c. SSB 5493 / RCW 39.12.015(3)

SSB 5493, codified at RCW 39.12.015(3), provides:

> (a) Except as provided in RCW 39.12.017, and *notwithstanding RCW 39.12.010(1)*, the industrial statistician shall establish the *prevailing rate of wage* by adopting the hourly wage, usual benefits, and overtime *paid for the geographic jurisdiction established in collective bargaining agreements for those trades and occupations that have collective bargaining agreements*. For trades and occupations with more than one collective bargaining agreement in the county, the higher rate will prevail.
>
> (b) For trades and occupations in which there are no collective bargaining agreements in the county, the industrial statistician shall establish the prevailing rate of wage as defined in RCW 39.12.010 by conducting wage and hour surveys. In instances when there are no applicable collective bargaining agreements and conducting wage and hour surveys is not feasible, the industrial statistician may employ other appropriate methods to establish the prevailing rate of wage.

(Emphasis added.)

The industrial statistician must adopt as the prevailing wage the highest rate found in a CBA, regardless of the number of employees covered by that CBA or hours worked. *AGCW II*, 200 Wn.2d at 402. The industrial statistician uses wage surveys—the method of establishing the prevailing wage prior to the amendment—only when there are no applicable CBAs. *Id.*

2. Complete Act

AGC argues that RCW 39.12.015(3) violates article II, section 37 because "it alters the existing prevailing wage laws without setting forth the amended sections at full length." Br. of Appellant at 44. We disagree.

Here, RCW 39.12.015(3) explicitly references other provisions within chapter 39.12 RCW. *See* RCW 39.12.015(3). For instance, RCW 39.12.015(3)(a) begins with the phrase, "Except as provided in RCW 39.12.017, and notwithstanding RCW 39.12.010(1)." Similarly, RCW 39.12.015(3)(b) provides, "For trades and occupations in which there are no collective bargaining

9

agreements in the county, the industrial statistician shall establish the prevailing rate of wage as defined in RCW 39.12.010 by conducting wage and hour surveys." An act or amendment that adopts by reference provisions from prior acts constitutes a "complete act" and satisfies the first prong of an article II, section 37 analysis. *Citizens for Responsible Wildlife Mgmt.*, 149 Wn.2d at 642. Because RCW 39.12.015(3) clearly references other provisions, it need not set forth the amended sections at full length.

The industrial statistician's duties under RCW 39.12.015(3) are readily ascertainable from the text alone. If a CBA exists for a particular trade or occupation, then the industrial statistician must adopt as the prevailing wage the rate found in the CBA, or the highest rate found within multiple CBAs. RCW 39.12.015(3)(a). The plain language of RCW 39.12.015(3)(a) states that the definition of "prevailing rate of wage" found in RCW 39.12.010(1) does not apply in circumstances where a CBA exists. RCW 39.12.015(3)(a); *see AGCW II*, 200 Wn.2d at 402. Conversely, if no CBA exists, the industrial statistician establishes the prevailing wage as defined in RCW 39.12.010(1). RCW 39.12.015(3)(b).

AGC also argues that before RCW 39.12.015(3) was amended by SSB 5493, workers "had the right to be paid a 'prevailing wage' based on the wages paid to the majority of workers in the locality." Br. of Appellant at 44. We disagree.

Here, AGC conflates a definitional statute with the creation of a right. While a worker on a public works project may be entitled to the prevailing wage, that worker is not entitled to a specific wage or specific calculation of the prevailing wage. RCW 39.12.010(1) and RCW 39.12.015(3) provide ways in which the industrial statistician may establish the prevailing wage, at his or her discretion, based on information available when he or she makes that determination.

Because the duties under RCW 39.12.015(3) are readily ascertainable, we hold that RCW 39.12.015 is a complete act. *Citizens for Responsible Wildlife Mgmt.*, 149 Wn.2d at 642.

  3.  Amendment Creates a Conflict or Alters Criteria in Existing Statutes

AGC argues that RCW 39.12.015(3) conflicts with various provisions within chapter 39.12 RCW, and therefore it violates article II, section 37. AGC contends that RCW 39.12.015(3) alters the definitions of "'prevailing'" and "'locality'" as found in RCW 39.12.010, and the mandate to use a CBA rate as the prevailing wage—specifically if that CBA is a multicounty one—is inconsistent with RCW 39.12.026(1). Br. of Appellant at 44, 45.

The State argues that "no provision of [RCW 39.12.010 or RCW 39.12.026] is rendered erroneous by SSB 5493." Br. of Resp't at 44. Specifically, the State contends that any misunderstanding of the definitions found within RCW 39.12.010 would be unreasonable, and there is no conflict with RCW 39.12.026(1) because it applies only to circumstances where the industrial statistician uses wage surveys.

We agree with the State that RCW 39.12.010 is not rendered erroneous by RCW 39.12.015(3). However, we agree with AGC that RCW 39.12.015(3) conflicts with RCW 39.12.026 and, therefore, violates article II, section 37.

  a.  RCW 39.12.010

AGC argues that RCW 39.12.015(3), as amended by SSB 5493, changed the definition of "'prevailing'" in the clause "prevailing rate of wage" found in RCW 39.12.010(1). Br. of Appellant at 44. AGC contends that the "modified" definition of prevailing "no longer means prevailing." Br. of Appellant at 44.

RCW 39.12.010 does not define "prevailing" on its own; rather, RCW 39.12.010(1) defines "prevailing rate of wage." Courts may use dictionary definitions to discern the plain meaning of terms undefined by statute. *AllianceOne Receivables Mgmt., Inc.*, 180 Wn.2d at 395. "Prevailing" means "most frequent" or "generally current." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1797 (2002). Therefore, a "prevailing" wage need not be only the "most frequent" so long as it is "generally current." As discussed in the analysis above, the industrial statistician may determine the prevailing wage according to two different definitions depending upon the circumstances.

If a CBA exists for a particular trade or industry, then RCW 39.12.015(3)(a) requires that the CBA wage rate—arguably a "generally current" rate—be adopted. If there is no CBA, then the definition of prevailing wage within RCW 39.12.010(1) applies. RCW 39.12.015(3)(b). Therefore, RCW 39.12.015(3) does not modify the definition of "prevailing" in such a way that renders the definition of "prevailing rate of wage" in RCW 39.12.010(1) erroneous. Moreover, there is no conflict between RCW 39.12.015(3)(a) and RCW 39.12.010(1) because RCW 39.12.015(3)(a) expressly states "notwithstanding RCW 39.12.010(1)."

AGC also argues that RCW 39.12.015(3) changed the definition of "'locality.'" Br. of Appellant at 45. AGC contends that "in some counties, a 'locality' means a tiny sliver of land covered by a CBA but in other counties the original definition of the largest city in the county applies." Br. of Appellant at 45.

Here, locality is defined only in RCW 39.12.010(2). RCW 39.12.015(3) does not once use the word "locality." Instead, RCW 39.12.015(3)(a) uses the phrase, "geographic jurisdiction." RCW 39.12.010(1) is the only provision that uses "locality"; therefore, RCW 39.12.010(2) is

subsumed by the definition of prevailing wage found within RCW 39.12.010(1). There is simply no conflict between RCW 39.12.010(2) and RCW 39.12.015(3) because, contrary to AGC's argument, RCW 39.12.010(2) and RCW 39.12.015(3) do not possess competing definitions of "locality." Again, as discussed in the analysis above, the industrial statistician determines which definition of "prevailing rate of wage" applies depending on the circumstances. If a CBA exists, then the industrial statistician considers the "geographic jurisdiction established in" the CBA. RCW 39.12.015(3)(a). If no CBA exists, then RCW 39.12.010(1) and its attendant definition of "locality" in RCW 39.12.010(2) apply. *See* RCW 39.12.015(3)(b). Therefore, we hold RCW 39.12.015(3) does not render RCW 39.12.010(2) erroneous.

b.      RCW 39.12.026

AGC argues that "a reading of RCW 39.12.026(1) would lead one to conclude that L&I does not use hours worked in one county to set the prevailing wage rate in another." Br. of Appellant at 45. AGC contends that because RCW 39.12.015(3)(a) "plainly calls for the Industrial Statistician to use data of work performed in one county to establish the prevailing wages in another county if the work is performed under a CBA," there is a direct conflict with RCW 39.12.026(1), which limits data collection and use to the county where the work is performed. Br. of Appellant at 46.

The State asserts that because RCW 39.12.026(1) specifically references RCW 39.12.015, a reasonable person would then look at RCW 39.12.015 and understand that RCW 39.12.026(1) does not apply to RCW 39.12.015(3)(a). The State further contends "[c]ross-references to other statutes satisfy the second prong." Br. of Resp't at 45. We disagree with the State.

RCW 39.12.026(1) states: "In establishing the prevailing rate of wage under RCW 39.12.010, 39.12.015, and 39.12.020, all data collected by the department of labor and industries may be used only in the county for which the work was performed." RCW 39.12.015(3)(a), however, directs the industrial statistician to "establish the prevailing rate of wage by adopting the hourly wage . . . paid for the *geographic jurisdiction* established in collective bargaining agreements." (Emphasis added.)

We note that AGC's statement that RCW 39.12.015(3)(a) "plainly" calls for the "use [of] data of work performed in one county to establish the prevailing wages in another county if the work is performed under a CBA" is not entirely true. Br. of Appellant at 46. For instance, a CBA's geographic jurisdiction could be within a single county. If that is the case, then the industrial statistician would not be using data from another county to set the prevailing wage, even if a CBA was involved. However, the plain language of RCW 39.12.015(3)(a) permits the use of a multicounty CBA to set the prevailing wage. When parties negotiate a multicounty CBA, they undoubtedly take account of wage rates in different areas, i.e., counties, when landing on a finalized rate. Even if the CBA delineated pay rates between workers in different counties in a multicounty CBA, the industrial statistician is still obligated to adopt the highest rate as the prevailing wage. RCW 39.12.015(3)(a). Accordingly, if a multicounty CBA wage is used to set the prevailing wage in multiple counties, at least one county's prevailing wage could be established by data from another county.

Also, while RCW 39.12.026(1) references RCW 39.12.015, the reference is ambiguous. The first clause of RCW 39.12.026(1) states, "In establishing the prevailing rate of wage under RCW 39.12.010, 39.12.015, and 39.12.020 . . . ." As discussed, there are two ways to establish

the prevailing wage under RCW 39.12.015—one when a CBA exists and one when no CBA exists. The statute is not clear whether the legislature intended RCW 39.12.026(1) to apply to all of RCW 39.12.015, or only to RCW 39.12.015(3)(b), the non-CBA scenario. And, contrary to the State's argument, there is no qualifying language within RCW 39.12.026(1), such as "when conducting wage surveys," which would clarify an intention to exclude the one-county limitation found in RCW 39.12.026(1) from applying to RCW 39.12.015(3)(a).

Furthermore, RCW 39.12.015 says nothing of RCW 39.12.026. *See* RCW 39.12.015. RCW 39.12.015's lack of reference to RCW 39.12.026 is all the more apparent because it does reference other provisions: "Except as provided in RCW 39.12.017, and notwithstanding RCW 39.12.010(1)." RCW 39.12.015(3)(a).

The State also argues that "RCW 39.12.026 does not require that L&I calculate a prevailing wage rate where it finds data, nor does it prohibit L&I from creating a rate with no survey data. Here, the Industrial Statistician is not setting the wages based on survey data about hours. Instead, the statistician is using CBAs." Br. of Resp't at 46. This argument is inapposite.

While true that RCW 39.12.026(1) neither requires the industrial statistician to calculate the prevailing wage where he or she finds data nor prohibits the establishment of a prevailing wage without data, the State misses the thrust of the provision. CBAs are a form of data that an industrial statistician may use to establish a prevailing wage. *See* WAC 296-197-019(1)(b); RCW 39.12.015(3)(a). Just because a CBA wage is adopted as the prevailing wage does not disqualify the CBA as "data."

Furthermore, RCW 39.12.026(1) does not confine the definition of "data" to only "wage survey data." The provision states "*all data* collected by the department of labor and industries."

15

No. 54465-2-II

RCW 39.12.026(1) (emphasis added). As discussed above, if the industrial statistician used a multicounty CBA—a form of data—to establish the prevailing wage in several counties, a straightforward reading of RCW 39.12.026(1) is then in direct conflict with RCW 39.12.015(3)(a). It becomes impossible for the industrial statistician to comply with both statutes if a multicounty CBA is involved. Because of this conflict, RCW 39.12.015(3)(a) renders a straightforward reading of RCW 39.12.026(1) erroneous. Therefore, RCW 39.12.015(3)(a) violates article II, section 37. Accordingly, we reverse the trial court's summary judgment order in regard to article II, section 37 and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Che, J.

16